**Norfolk**

SANDRA A. DERBY

v.

GEORGE E. DERBY, JR.

No. 1208-87-1

Decided March 7, 1989

---

22

COUNSEL

Alan S. Mirman, for appellant.

Anthony L. Montagna, Jr., for appellee.

OPINION

**COLEMAN, J.**—In this divorce case, we determine whether the evidence presented to the trial court sufficed to set aside a written property settlement agreement on the grounds of unconscionability and constructive fraud or duress. Sandra Derby argues that the trial court erred in holding the parties' separation agreement invalid since George Derby did not prove fraud, duress, or undue influence. She also argues that George Derby did not prove adultery by clear and convincing evidence and that the judge therefore erred in awarding Mr. Derby a divorce.

George and Sandra Derby were married April 19, 1961. In twenty-two years of marriage they had two children. Mrs. Derby filed for divorce on October 6, 1983, alleging cruelty. On October 14, 1985, Mr. Derby filed a cross-bill alleging adultery by the wife on several specified occasions. She amended the complaint to allege a one-year separation on June 26, 1984.

On Monday, July 9, 1984, at 8:00 a.m. Mrs. Derby went to the beauty shop owned by the couple to contact her estranged husband. She took with her a copy of a property settlement agreement drafted by her lawyer which provided for an equal division of most of their property. Both parties had employed attorneys. Although the separation agreement had been delivered to Mr. Derby's attorney the prior Thursday, Mr. Derby had not conferred with his attorney concerning its contents. Mrs. Derby called her husband into the parking lot where, after briefly discussing the agreement, the paragraph providing for equal division of the property was stricken and Mrs. Derby wrote in, "Husband agrees to relinquish his portion of property located at 1824 E. Ocean View Ave., and to sign ownership of property over to his wife at earliest

possible date." Both then signed the agreement in the parking lot on the hood of a car. Mrs. Derby secured a deed conveying the Ocean View Avenue property to her, which Mr. Derby signed before a notary public at 4 p.m. that afternoon. Mr. Derby did not consult his attorney concerning the agreement or deed prior to their execution.

The agreement and deed conveyed to Mrs. Derby the entire value of essentially all of the valuable real estate which the parties owned. Mr. Derby claimed that he signed the agreement because he believed that Mrs. Derby would return to the family home if he did so. Mrs. Derby denied that she told her husband she would return to him if he signed it. She testified that Mr. Derby did state before signing the modified agreement, "He said, I know, Sandra, I hear you, but you don't understand what God is doing."

In regard to the evidence of adultery, a private investigator testified at the commissioner's hearing that on at least five occasions in 1985 he had followed Mrs. Derby to a house where she and John Singletary spent the entire night. He also testified that he had observed them in public engaged in affectionate behavior such as one massaging the other's neck, entwining arms, and patting buttocks. The commissioner in chancery recommended that a divorce be granted to George Derby on the ground of Mrs. Derby's adultery. He further recommended that the stipulation agreement be found valid because there was insufficient evidence of fraud or undue influence to set it aside. The trial judge heard the exceptions and ordered the divorce be granted on the ground of Mrs. Derby's adultery but ruled that the stipulation agreement was unconscionable and was obtained by constructive fraud or duress and thus was not valid.

## I. *Adultery*

We first consider the adultery issues. Sandra Derby argues that the evidence offered to prove adultery was not clear and convincing, that even if adultery was proved it was immaterial because it occurred after the breakdown of the marriage, and that recrimination would bar a divorce on the ground of adultery. Addressing the arguments in the order presented, we first consider the sufficiency of the evidence.

■ To prove adultery, the evidence of extramarital sexual intercourse must be clear and convincing. "While a court's judgment cannot be based upon speculation, conjecture, surmise or suspicion, adultery does not have to be proven beyond all doubt." *Coe v. Coe*, 225 Va. 616, 622, 303 S.E.2d 923, 927 (1983). We conclude there is sufficient credible evidence to support the finding of adultery.

Although the testimony of a hired private detective should be carefully scrutinized because of the potential for bias inherent in this type employment relationship, a detective's testimony nevertheless may constitute credible evidence. The questions of weight and believability are for the factfinder, who in this case found the detective's testimony credible. His testimony was not refuted nor was it inherently incredible. The evidence, viewed in the light most favorable to the appellee, showed that Mrs. Derby and Mr. Singletary spent several nights in the same house together and that they engaged in affectionate behavior in public. Mrs. Derby acknowledged that she and Mr. Singletary were close friends who saw each other about three times a week and that she visited his relatives in North Carolina with him. The evidence was credible and sufficient to support the conclusion of adultery, and we affirm that finding. *See Thompson v. Thompson*, 6 Va. App. 277, 367 S.E.2d 747 (1988).

■ Appellant argues that even if adultery were proven, it was post-separation adultery and, therefore, since it did not contribute to the breakdown of the marriage, it could not provide a ground for divorce. The fact that the adultery occurred after the parties separated does not lead inexorably to the conclusion that the adultery had nothing to do with the breakdown of the marriage. "The commission of adultery during that period [of separation] by either party to a marriage in trouble is the one act most likely to frustrate and prevent a reconciliation." *Coe v. Coe*, 225 Va. 616, 620, 303 S.E.2d 923, 925-26 (1983); *see also Rosenberg v. Rosenberg*, 210 Va. 44, 168 S.E.2d 251 (1969). Moreover, the ground for divorce need not have caused the deterioration of the marriage in order to award a divorce on such basis. The ground may be only the legal requirement which the legislature has recognized must exist before public policy will permit courts to dissolve a failed marriage. The commissioner and the trial court determined that Mrs. Derby was guilty of adultery and that, as a

consequence, Mr. Derby should be awarded a divorce. Because the statute authorizes a divorce on the ground of adultery, there was no error in that determination.

Appellant's argument that the divorce grounded on adultery is barred by recrimination because the one year separation constituted ground for divorce under Code § 20-91(9) has no merit. The doctrine of recrimination provides that a party is barred from obtaining a divorce if his or her own conduct constituted sufficient grounds for divorce. *Venable v. Venable*, 2 Va. 178, 184, 342 S.E.2d 646, 650 (1986). The widespread acceptance of granting divorce without fault has led to considerable criticism of recrimination as archaic. 2 H. Clark, *The Law of Domestic Relations in the United States* § 14.13 (1987). Inherent in the doctrine is the notion of fault. Because a divorce based on one year's separation involves no fault by either party and indeed, must be mutually consensual, the doctrine of recrimination has no applicability in this case. Code § 20-91(9) specifically provides that fault grounds shall not be a ground for the defense of recrimination to a divorce based upon one-year separation. Conversely separation is not "conduct" which will bar a faultless party from obtaining a divorce on the fault of the other party. The trial court did not err in rejecting the recrimination defense and in granting a divorce to George Derby based on adultery.

## II. *Validity of Separation Agreement*

Next, we consider whether the court erred in finding the separation agreement invalid because it was unconscionable and obtained by constructive fraud or duress. "[M]arital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain." *Cooley v. Cooley*, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980) (citation omitted).

Code § 20-109.1 provides that "[a]ny court may affirm, ratify and incorporate by reference in its decree dissolving a marriage or decree of divorce whether from the bond of matrimony or from bed and board, any *valid* agreement between the parties." (emphasis added). While this section grants a trial court discretion in dealing with agreements, that discretion extends only to

"valid agreements." Therefore, before a court may exercise its discretion, it must determine the threshold issue of validity. In *Forrest v. Forrest*, 3 Va. App. 236, 349 S.E.2d 157 (1986), we held that a trial court is not required to conduct a separate inquiry into the validity of an agreement which appears valid on its face and whose validity is not challenged by the parties. The finding by the court that the parties reached an agreement necessarily includes a determination that the agreement was valid. *Id.* at 240, 349 S.E.2d at 160.

A trial judge may decline to pass on the validity of the separation agreement and neither affirm, ratify, nor incorporate it into the divorce decree. However, a court which does address the issue of validity of the agreement and declares it invalid acts within its jurisdiction. Since the challenge to the validity of the agreement was raised in the divorce proceeding and the court did adjudicate the issue this Court has jurisdiction under Code § 17-116.05(3) to review the determination that the contract, which was integral to the divorce proceeding, was invalid.

The trial judge ruled that the Derbys' agreement was invalid because it was unconscionable and it was obtained by constructive fraud or duress. Mrs. Derby correctly notes that to avoid the contract on these grounds, the one contesting the contract must prove the allegations by clear and convincing evidence. *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984); *Gill v. Gill*, 219 Va. 1101, 1106, 254 S.E.2d 122, 125 (1979). We review the evidence in the light most favorable to Mr. Derby, as the prevailing party, and, because the trial court disagreed with the commissioner's conclusions of law, we must decide whether the evidence supports the commissioner or the conclusions of the trial court. *Jamison v. Jamison*, 3 Va. App. 644, 646, 352 S.E.2d 719, 720 (1986).

We first consider the issue of fraud. Mrs. Derby argues that there was insufficient evidence of fraud, duress, or undue influence to find the contract invalid. We agree. Because there is no evidence of actual misrepresentation, concealment or deceit to suggest actual fraud, we assume the trial court based its decision on a finding of constructive fraud. Constructive fraud is a "[b]reach of legal or equitable duty which, irrespective of moral guilt, is declared by law to be fraudulent because of its tendency to deceive others or violate confidence." *Wells v. Weston*, 229 Va.

72, 77, 326 S.E.2d 672, 675-76 (1985) (citing *Black's Law Dictionary* 284 (5th ed. 1979)). Thus, to determine fraud the relationship between the parties and the duties, if any, owed to one another define the standards by which their conduct and transaction will be judged. Marriage is a confidential relationship of trust imposing the highest fiduciary duty upon the spouses in their intermarital dealings. However, "[i]f a husband and wife separate and employ attorneys to negotiate an agreement in settlement of their property rights, they become adversaries and their former fiduciary or confidential relationship ends." *Barnes v. Barnes*, 231 Va. 39, 42, 340 S.E.2d 803, 804 (1986) (citations omitted). In *Barnes* the Supreme Court held that where the parties were dealing at arm's length, whether or not they are represented by counsel, there is no duty to disclose marital infidelity when negotiating a property settlement agreement and the failure to disclose such misconduct was not constructive fraud. *Id.* at 43, 340 S.E.2d at 805.

In the present case, the trial court apparently based its finding of constructive fraud on Mrs. Derby's approaching her husband with the agreement before his attorney's regular office hours and presumably before the attorney had discussed it with Mr. Derby. Fraud as found by the trial court consisted of Mrs. Derby's "opportunistically . . . [r]ecognizing and playing on [Mr. Derby's] weakness and [his] predisposition . . . to do anything to get her back." Fraud, according to the trial court, involved the means utilized by Mrs. Derby which falsely held out hope to Mr. Derby that if he signed the agreement a reconciliation might be affected.

As in *Barnes*, no fiduciary duty existed between the Derbys even though they were husband and wife. They were dealing with each other at arm's length insofar as negotiating the property settlement agreement was concerned. Mrs. Derby, by promoting her own interest, did not act fraudulently in presenting the agreement to her husband or in representing its content. Fraud, however, may involve subtle forms of deceit or misrepresentation. Regardless of whether Mrs. Derby was aware that Mr. Derby might have been fostering some hope of a reconciliation, she did nothing which we find sufficient to constitute fraud. Although the evidence does support the trial court's finding that Mr. Derby signed the agreement hoping to save his marriage, the recitals in the agreement which he signed acknowledged that a divorce suit was pend-

ing and the agreement would be ratified, approved and incorporated in the final decree of divorce. Mrs. Derby did not misrepresent or conceal the terms or effect of the agreement or do any act sufficient to constitute fraud.

 Our holding that the evidence was insufficient to prove fraud does not resolve whether the trial court erred in finding the agreement was unconscionable. Fraud is generally determined by reviewing the conduct of the parties in relation to their legal and equitable duties to one another; unconscionability is more concerned with the intrinsic fairness of the terms of the agreement in relation to all attendant circumstances, including the relationship and duties between the parties. A party may be free of fraud but guilty of overreaching or oppressive conduct in securing an agreement which is so patently unfair that courts of equity may refuse to enforce it.

 Historically, a bargain was unconscionable in an action at law if it was " 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.' " Restatement (second) of Contracts § 208 comment b (quoting *Hume v. United States*, 132 U.S. 406, 411 (1889)). If inadequacy of price or inequality in value are the only indicia of unconscionability, the case must be extreme to justify equitable relief. *Smith Bros. v. Beresford*, 128 Va. 137, 169-70, 104 S.E. 371, 381-82 (1920). A person may legally agree to make a partial gift of his or her property or may legally make a bad bargain. *Id.* But gross disparity in the value exchanged is a significant factor in determining whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resultant agreement unconscionable. *Id.* at 170, 104 S.E. at 382. Other unfair and inequitable incidents in addition to the inadequacy, however, may more readily justify relief.

When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or

affirmative.

Pomeroy, *Equity Jurisprudence* § 928 (5th ed. 1941).

The trial court found that there was an inadequacy of consideration to support the agreement. We disagree with that holding. Consideration adequate to support a contract does not have to be full consideration. However, we find that the evidence did support the finding that a gross disparity existed between the value of the properties that parties would receive. Courts must view that apparent inequity in light of other attendant circumstances to determine whether the agreement is unconscionable and should be declared invalid.

In separation agreements particularly, unconscionability may be of heightened importance. While no fiduciary duty exists between the parties, marriage and divorce creates a relationship which is particularly susceptible to overreaching and oppression. *Barnes*, 231 Va. at 42, 340 S.E.2d at 804-05. Professor Homer Clark suggests three reasons for this special emphasis. First, the relationship between husband and wife is not the usual relationship that exists between parties to ordinary commercial contracts. Particularly when the negotiation is between the parties rather than between their lawyers, the relationship creates a situation ripe for subtle overreaching and misrepresentation. Behavior that might not constitute fraud or duress in an arm's-length context may suffice to invalidate a grossly inequitable agreement where the relationship is utilized to overreach or take advantage of a situation in order to achieve an oppressive result. Second, Clark notes that unlike commercial contracts, the state itself has an interest in the terms and enforceability of separation agreements. If either spouse is left in necessitous circumstances by a separation agreement, that spouse and any children might become public charges. Finally, Clark notes that courts have recognized that the law should encourage the resolution of property issues through the process of negotiation rather than through litigation. "These processes are more likely to succeed if the parties and their lawyers know in advance that . . . fairness will be insisted upon by the courts when they are called upon to approve the agreement." Clark, *supra*, § 19.2.

Virginia courts have on occasion examined contracts, including separation agreements, for unconscionability. In *Switzer v.*

*Switzer*, 67 Va. (26 Gratt) 189 (574) (1875), the Court set aside a separation agreement in which the wife relinquished all her rights to custody and control of her children as well as all her inheritance rights to two tracts of land valued at $12,000 in return for "a small quantity of personal property of but little value" and an annual delivery of grain and pork worth about $80. Finding that the wife would have agreed to anything to avoid the scandal of divorce on grounds of her adultery, the Court found the contract void by reason of disability of coverture, want of freedom of will, and inadequacy of consideration. *Id.* at 192 (583); *see also Vellines v. Ely*, 185 Va. 889, 896, 41 S.E.2d 21, 24 (1947) ("An agreement between spouses settling property rights will be upheld in divorce proceedings if it is fair, free from fraud, and not promotive of divorce").

In *Owens v. Owens*, 196 Va. 966, 86 S.E.2d 181 (1955), the complainant tried to set aside a deed which purported to grant his brother his entire interest in their father's estate in consideration of $5,000 to settle some bad check charges. The plaintiff's interest in the estate totaled about $34,000, and he testified that he thought that the deed was to secure only that $5,000 advanced by the defendant. The court noted:

> Courts cannot relieve one of the consequences of a contract merely because it was unwise. "They are not guardians in general to the people at large but where inadequacy of price is such as to shock their conscience, equity is alert to seize upon the slightest circumstance indicative of fraud, either actual or constructive."

*Id.* at 974, 86 S.E.2d at 186 (quoting *Jackson v. Seymour*, 193 Va. 735, 741, 71 S.E. 181, 185 (1952)). Finding that the defendant's brother was a trustee of the estate and that the parties were therefore in a confidential fiduciary relationship, the court found fraud and set aside the deed. *See also Jessee v. Smith*, 222 Va. 15, 278 S.E.2d 793 (1981).

Viewing the evidence in this case in the light most favorable to George Derby, the gross disparity in the value of the property each received under the separation agreement is shocking in that Sandra Derby becomes sole owner of the bulk of the parties' marital property valued at $260,000 as apartments or $423,000 if converted into condominiums. The trial judge found, "By this prop-

erty settlement agreement the husband gave up essentially everything he had ever earned and accumulated in his lifetime for an ephemeral promise on the part of the wife to permit him to reside in one of the apartment units in the building if he 'did not pull anything.' " In addition, Sandra Derby is received retroactive and prospective rent for the apartment George Derby occupied during the separation and after the divorce. The small amount of remaining marital property was divided evenly, but the agreement provided that George Derby waived his rights to spousal support while Sandra Derby retained hers. The trial court's finding of unconscionability on its face was supported by the evidence. *See Williams v. Williams*, 306 Md. 332, 508 A.2d 985 (1986); *Smith v. Smith*, 125 W. Va. 489, 24 S.E.2d 902 (1943).

The court's conclusion of unconscionability was supported by findings of additional factors. There is evidence of concealment, misrepresentation, and undue advantage on the part of Mrs. Derby as well as emotional weakness on the part of Mr. Derby. First, the wife concealed her relationship with Singletary and assured her husband that there had been no infidelity. Spouses have no duty to disclose marital infidelity, *Barnes*, 231 Va. at 43, 340 S.E. at 805, but misrepresenting the situation under circumstances that tend to encourage the other spouse to anticipate a reconciliation are important in considering whether there has been oppressive conduct to achieve an unfair agreement. Mrs. Derby did not inform Mr. Derby of her reasons for desiring a divorce or necessarily that she desired divorce. She told him she "just needed some space." Further, she misrepresented her intentions about returning to the marriage. The transcript reveals the following exchange between Mr. Derby and his lawyer:

Q. Now, at any time did she specifically tell you that she would return to the family home?

A. Yes.

Q. And when were those occasions?

A. It was several times. And the last one was, George, I'm not going to say—I'm not going to say yes, and I'm not going to say no, just give me room to breathe. Don't question me where I've been in the evening if I get home at 11:00. Just

leave me alone.

I said, Sandra, I love you. You said you haven't been messing around, and I believe you. I have no reason not to believe you. And so being so close to the situation and when you love someone like that, that's when I did what I did because she represented this to me in a way that, I still love you, but I'm not quite sure . . . .

The trial judge found, and the evidence supports that finding, that Mrs. Derby "played upon the weakness of her husband and his desire to reconcile" to exact Mr. Derby's agreement. The court found that the reason Mr. Derby signed the contract was because he engaged in "magical thinking" that somehow signing the agreement would save his marriage. Dr. Vizcaino, a psychiatrist testifying about Mr. Derby's emotional condition, stated:

I think that Mr. Derby was then extremely suggestible and that any indication that Mrs. Derby at the time would have given him as to an indication for her to decide on going or returning back to the marriage he would have then agreed to do whatever it was. He would have been suggestible.

The evidence further showed that Mr. Derby had undergone a religious experience which convinced him to sign the agreement. He testified that God sent him a sign and told him to endorse the agreement. In a letter to his lawyer on July 23, he stated: "God is working a miracle between my wife and myself — only she is not as aware of it as I am." He further stated: "So I looked it [the agreement] over, yes. I would have laid down in the street if she would have asked me to. I would have laid right down in the street because I loved her." While Mrs. Derby is not responsible or accountable for Mr. Derby's emotional problems, she took advantage of them in a manner that induced an unconscionable agreement. *See, e.g., Hale v. Hale*, 74 Md. App. 555, ____ 539 A.2d 247, 252 (1988) (trial court's finding that husband knew wife trusted him and used the trust to exact agreement from her supported striking agreement).

The circumstances under which the agreement was prepared, negotiated and executed are significant. Neither party was repre-

sented by counsel during the final "negotiations." Indeed, there is no evidence that the parties discussed or negotiated the terms prior to Mrs. Derby confronting him with the agreement prepared by her lawyer; Mrs. Derby testified that "there wasn't much conversation before he signed it." Mrs. Derby, who initiated the signing, chose a day after her lawyer had drawn up an agreement but when Mr. Derby's lawyer had not reviewed it with him, and a time early in the morning on a day when she knew Mr. Derby would be alone. She insisted that the two transact their business in the parking lot and not in the shop next to Mr. Derby's lawyer's place of business. Her haste to obtain Mr. Derby's signature on the deed after obtaining it on the agreement is another attendant factor which the trial court could consider. The circumstances of Mrs. Derby's concealment and misrepresentation about her conduct and intentions were major considerations which induced Mr. Derby to sign the contract. Mr. Derby's emotional weakness, when viewed with the circumstances of the signing of the agreement and deed, are sufficient to support the court's finding. There being evidence to support the trial judge's conclusion that the separation agreement was invalid because it is unconscionable, we affirm the decision. Having found the agreement invalid, the court properly declined to affirm, ratify or incorporate it into the divorce decree.

*Affirmed.*

Benton, J., and Moon, J., concurred.