## CIRCUIT COURT OF WESTMORELAND COUNTY

Rita Faye Hinson

v.

Michael A. Hinson

November 16, 1990

By JUDGE JOSEPH E. SPRUILL, JR.

The Court is asked in this divorce proceeding to set aside a property settlement agreement entered into between Rita Faye Hinson (Rita) and Michael A. Hinson (Michael).

Rita and Michael were married April 7, 1983. One child, Shanda, was born to the parties on November 15, 1984. On February 9, 1988, the wife left the marital home and returned to her mother's home. On March 18, 1988, the parties entered into a property settlement agreement which is the subject of this proceeding. The agreement provides for the allocation of the real and personal property of the parties and resolves other marital rights and obligations. It is silent, however, as to the custody and support of Shanda.

The evidence is that soon after the separation, the husband contacted the wife and asked her to come to his lawyer's office to sign the agreement. The wife agreed to "sign over the property" provided she got custody and $200.00 per month child support. Rita considered herself to be guilty of desertion (a finding which has not been made) since it was she who left the marital home. She was without funds to engage a lawyer and claims she was willing to give up everything in exchange for her husband's promise not to fight for custody of Shanda.

Michael denies Rita's account of the custody arrangement and claims that the parties agreed on "split custody."

Prior to signing the agreement, Rita went to the office of Michael's counsel, Hutt & Robertson, where Peggy Evans, Esq., then an associate, reviewed her notes on the terms to be included in the agreement as given to her by her client, Michael. Mrs. Evans testified that Rita was unhappy with these terms but cannot recall the reason for the unhappiness. She advised Rita to seek counsel.

Thereafter, on March 7, 1988, Mrs. Evans left the Hutt & Robertson office, and Jeffrey Hutt, Esq., assumed the representation of Michael when the agreement was signed on March 18, 1988. Mr. Hutt testified that the notes Mrs. Evans had taken indicated that custody was to be joint, with reasonable visitation. The inference is that Mrs. Evans informed Rita of this provision, and this was the reason for Rita's displeasure when she conferred with Mrs. Evans. Mr. Hutt further testified that his understanding was that the parties had resolved to work out the custody between themselves, and thus no provision for custody was included in the agreement. He, too, advised Rita to consult counsel.

Eight days after the property settlement agreement was signed, husband petitioned the Juvenile and Domestic Relations Court for custody. There, Rita was awarded custody, and Michael was ordered to pay $300.00 per month child support.

Wife asks that the property settlement agreement be declared invalid on the basis of unconscionability and that it was procured through fraud and duress. Both parties rely on *Derby v. Derby*, 8 Va. App. 19 (1989), and *Drewry v. Drewry*, 8 Va. App. 460 (1989), to support their respective positions. Both cases involve challenges to the validity of a property settlement agreement on grounds of unconscionability, constructive fraud, and duress. In *Derby*, the agreement was found invalid, and in *Drewry*, the agreement was upheld. In each case, as it must be in this case, factual findings are of paramount importance.

Both Rita and Michael agree that Michael was the dominating force in this union. He controlled the purse and made the decisions. Rita appears unsophisticated and reticent. Michael appears more self-assured and outgoing. Both parties had previous marriages. Rita had not seen the property settlement agreement before she

signed it, but Mr. Hutt took pains to review its provisions with her before she did sign. She declined both his and Mrs. Evans's suggestion to obtain counsel.

Because their accounts differ, we must choose between Michael's version of the events and Rita's. Once the parties separated, it· was Michael who took the initiative. He contacted a lawyer; he gave the lawyer the terms of the agreement; he reviewed the agreement and then called Rita to come and sign; and he, shortly thereafter, petitioned for custody. It is reasonable to assume that if joint custody were agreed upon, as Michael claims, it would have been included in the agreement. Further, there would have been no need to petition for custody so soon after the agreement was signed.

On the other hand, it is clear from Rita's testimony that her one and only concern as this marriage dissolved was in being assured she would have custody of her daughter. This, to her, was the overriding issue compared to which all else was secondary. She testified that Michael agreed not to fight her for custody if she signed the agreement. Relying on this promise, she signed an agreement which transferred most of the marital assets to Michael. If she did not believe Michael would not challenge her custody, we can find no rational basis for her willingness to accept the agreement. It is curious, if not suspicious, that an agreement which otherwise covers all aspects of the marriage dissolution, is silent about the one thing that is of transcendent importance to one of the two parties to the agreement.

As noted in *Derby*:

> marriage and divorce creates a relationship which is particularly susceptible to overreaching and oppression . . . . Behavior that might not constitute fraud or duress in an arm's-length context may suffice to invalidate a grossly inequitable agreement where the relationship is utilized to overreach or take advantage of a situation in order to achieve an oppressive result. 8 Va. App. at p. 29.

In *Drewry*, the Court of Appeals held:

to establish constructive fraud, one must prove the following by clear, cogent, and convincing evidence: that there was a *material false representation*, that the hearer believed it to be true, that it was meant to be acted on, that it was acted on, and that damage was sustained . . . . For constructive fraud to exist, the party seeking to avoid a contract need not show that there was an actual "intent to deceive" by the other party, but it is necessary to prove that there has been a material misrepresentation. 8 Va. App. at p. 471.

We do not find the agreement here to be so one-sided or oppressive as to be unconscionable. We do find, however, that Michael induced Rita to believe he would not contest her custody of Shanda, that Rita believed this representation, and, in reliance on it, signed the property settlement agreement. We believe this was in fact a material misrepresentation as Michael's subsequent action demonstrated. Thereafter, Rita found herself in a contest for custody and responsible for the attendant expenses.

Constructive fraud is a breach of legal or equitable duty which, irrespective of moral guilt, is declared by law to be fraudulent because of its tendency to deceive others or violate confidence . . . . Thus, to determine fraud, the relationship between the parties . . . define the standards by which their conduct will be judged. Marriage is a confidential relationship of trust imposing the highest fiduciary duty upon the spouses in their inter-marital dealings. *Derby v. Derby*, 8 Va. App. at p. 26, 27.

The circumstances here require a finding that the agreement was executed by Rita on the basis of constructive fraud by Michael, and therefore, it ought to be set aside.