Cardwell Garst

    v.

Arthur H. Garst, Jr.

December 20, 1996

Case No. CH95-164

BY JUDGE ROBERT P. DOHERTY, JR.

This case involves the transfer of 1,100 shares of common stock in Occanneechi, Incorporated, from Cardwell Garst to his brother, Dr. Arthur H. Garst, Jr. The stock in this closely-held family corporation is currently worth approximately $178.00 per share or $195,000.00 for all 1,100 shares. These same shares were worth approximately $500,000.00 in the late 1980's.

As evidenced by a writing dated February 3, 1985, Cardwell borrowed $5,100.00 from his brother Arthur and pledged his 1,100 shares of Occanneechi, Incorporated, as collateral for the debt. The writing declared that if the loan was not repaid within five years, Cardwell's 1,100 shares of stock would become the property of Arthur. Thereafter, the agreement of the parties was amended on April 21, 1985, January 25, 1988, and March 16, 1989, increasing the loan to $7,500.00. On March 29, 1990, Cardwell again contacted his brother to borrow an additional $500.00 for taxes. Instead of the $500.00 loan, Arthur claimed that the 1,100 shares of stock had become his because Cardwell had not repaid the borrowed funds. Arthur wrote a check for $5,000.00 to Cardwell as additional consideration, and Cardwell signed the stock certificate over to Arthur. The notation on the $5,000.00 check said, "This + loan for 1,100 shares Occanneechi." The notation on the original agreement is "3/29/90 had Cardwell's stock transferred to me. Gave him $5,000.00 to add to total."

Cardwell claims that on March 29, 1990, the same day he got the $5,000.00 check from Arthur, he asked if he would be able to redeem the 1,100 shares of stock in the future. Arthur assured him that he could. Arthur recalls the conversation differently. He says that he promised to sell the stock back to Cardwell only if Cardwell got back on his feet and that Cardwell's job as a laborer and his debts indicate that he is not back on his feet.

Cardwell asked to redeem the stock in December 1993, but Arthur refused. Cardwell currently has the ability to procure sufficient funds to redeem the stock. Arthur takes the position that he is under no obligation to return them.

The three issues presented are:

1. Has the statute of limitations run on the contract?
2. Is the contract unconscionable?
3. Does the debtor have the right to redeem the collateral?

### Statute of Limitations

The agreement in this case was written and signed by the parties on February 3, 1985, and amended four different times, the last being on March 29, 1990. At that time, a check bearing a notation directly relating back to the original written agreement and its amendments was signed by one party, and a stock certificate was signed by the other party. If a new promise is made before a debt is barred by the statute of limitations, then the date of the new promise becomes the date from which the statute of limitations begins to run. *Ingram v. Harris*, 174 Va. 5 (1939). In this case, each amendment renewed the five-year statute of limitations contained in § 8.01-246, Code of Virginia (1950), as amended. The statute of limitations began to run on March 29, 1990. This cause was filed on March 2, 1995, which is within the statutory period. The Plea to the Statute of Limitations is therefore denied.

### Unconscionability

Without belaboring the point, the "purchase price" of the 1,100 shares of stock was $12,500.00. The stock was worth approximately $195,000.00. Cardwell, suffering from pecuniary necessity, had only wanted to borrow $500.00 to pay his taxes but was induced to accept the sum of $5,000.00 from his older brother in return for his stock. Although there was no fiduciary duty owed by one party to the other, the relationship of an older brother who is a physician to his younger brother who is not as well educated "is susceptible to overreaching and oppression." It "is not the usual relationship that exists between parties to ordinary commercial contracts." It "creates a situation ripe

for subtle overreaching ... ." and changes the manner in which the actions of the parties are viewed due to the familial relationship. The logic of *Derby v. Derby*, 8 Va. App. 19 (1989), fits in this instance even though the relationship in this case is that of siblings rather than that of husband and wife.

I find, by clear and convincing evidence, that the disparity in the value of the stock and the consideration is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Derby, supra,* quoting from *Hume v. United States*, 132 U.S. 406, 411 (1889). The agreement shocks the conscience of the Court. It is unconscionable and will not be enforced insofar as the forfeiture/transfer of the stock is concerned. The Court will make the parties whole by directing that the funds paid to Cardwell be returned to Arthur and that the 1,100 shares of stock be transferred back to Cardwell.

Notwithstanding the findings in this case, I am of the distinct impression that Dr. Garst was not motivated by an intent to profit from the transfer of stock to him by his brother. Rather his actions and his statements show an older brother trying his best to correct failings he believes exist with regard to his younger brother. The taking possession of the stock appears to be no more than an attempt to obtain leverage to force his brother to better himself.

### Redemption

In addition to the above reasons, I find that § 8.9-506, Code of Virginia (1950), as amended, is applicable to the facts of this cause. Cardwell attempted to redeem the collateral, but his brother refused the redemption. Upon tender of the money owed, the collateral should be returned.