COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Alston and Senior Judge Coleman

QUIJANG WANG, A/K/A
JULIE WONG

MEMORANDUM OPINION[*]
v. Record No. 1904-11-4 PER CURIAM
MARCH 27, 2012

JACK RAY CRUMPACKER

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jan L. Brodie, Judge

(Quijang Wang, *pro se*, on brief).

No brief for appellee.[1]

Quijang Wang (wife) appeals an order denying her request for spousal support and awarding attorney's fees to Jack Ray Crumpacker (husband). Wife argues the trial court erred by (1) "failing to consider mandatory statutes in the matter of spousal support and the award of attorney fees;" (2) "misconstruing provisions of the prenuptial agreement and misrepresenting evidence with plain wrong findings deficient in judicial impartiality;" and (3) "misinterpreting controlling legal principles of voluntariness and unconscionability to set aside a premarital agreement." Upon reviewing the record and appellant's brief, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On December 14, 2011, appellee filed a motion for summary affirmance and requested attorney fees. On January 10, 2012, appellee filed a motion for an extension of time to file a brief and for summary affirmance. We grant the motion(s) for summary affirmance. We deny the motion for an extension of time to file a brief.

On February 16, 2012, appellant filed a motion for sanctions for appellee's failure to file a brief. We deny that motion.

## BACKGROUND

Wife is a Chinese citizen whose visa was set to expire at the end of September 2009. Husband is an attorney who works for the FBI. During the summer of 2009, the parties discussed marriage. Husband retained an attorney to draft a prenuptial agreement. Wife retained an attorney to review and negotiate the terms of the prenuptial agreement. The parties signed the prenuptial agreement on September 15, 2009. They married on September 22, 2009. On November 7, 2009, husband notified wife, in writing, of his intention to live separate and apart from her. According to the prenuptial agreement, appellant was required to move out of the marital residence within thirty days of husband's letter of intent to separate.

Since wife was unemployed, she filed a petition for spousal support in the juvenile and domestic relations district court on April 26, 2010. The juvenile and domestic relations district court denied wife's petition based on the terms of the prenuptial agreement. Wife appealed.

After a three-day hearing in August 2011, the trial court held that the prenuptial agreement was enforceable and not unconscionable. Furthermore, the trial court held that wife voluntarily and knowingly entered into the agreement. The trial court found that the parties waived spousal support under the terms of the prenuptial agreement and that wife was barred from requesting or receiving spousal support. Pursuant to the terms of the prenuptial agreement, wife was ordered to reimburse husband $70,527, plus interest, for his legal fees and costs. Wife was represented by counsel at the hearing. Wife's counsel signed the order addressing the validity of the agreement as "seen and agreed (except for exceptions noted at trial)." Wife's counsel signed the order awarding husband $70,527 for his attorney's fees as "seen and agreed."

Wife noted her appeal *pro se*.[2] She did not file a transcript of the hearings, although a court reporter was present at the trial. She filed a written statement of facts with the trial court, and husband filed objections to the statement of facts. On November 8, 2011, the trial court denied certification of the statement of facts for several reasons, including the fact that the trial lasted several days and the trial court could not "remember the testimony of the witnesses well enough" to certify the statement, a transcript was available, and wife's statement was "an incomplete narrative containing legal argument and facts not in evidence and that does not reflect a true record of the case." The trial court allowed wife to file a complete transcript of the trial by November 18, 2011, but she did not do so. Wife filed a motion to reconsider, which the trial court denied.

ANALYSIS

Assignments of error 1 and 2

Wife argues that the trial court erred in denying her request for spousal support, awarding attorney's fees to husband, and misconstruing the prenuptial agreement.[3]

Wife's counsel signed the order regarding the validity of the prenuptial agreement and denial of spousal support as "seen and agreed (except for exceptions noted at trial)."[4] In addition, he signed the order awarding husband $70,527 in attorney's fees as "seen and agreed."

---

[2] A litigant appearing *pro se* "is no less bound by the rules of procedure and substantive law than a defendant represented by counsel." Townes v. Commonwealth, 234 Va. 307, 319, 362 S.E.2d 650, 657 (1987); see also Francis v. Francis, 30 Va. App. 584, 591, 518 S.E.2d 842, 846 (1999) ("Even *pro se* litigants must comply with the rules of court.").

[3] Wife raises additional issues in the argument section of her brief, but we will not consider them since they were not listed as assignments of error. Rule 5A:20.

[4] Without a transcript or written statement of facts, we do not know what objections counsel made at trial. See Rule 5A:8. Therefore, we are unable to determine whether wife's assignments of error 1 and 2 were preserved at trial.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18.

Since there were no specific objections to the trial court's orders, wife's first and second assignments of errors were not preserved at trial.

Assignment of error 3

Wife argues that the trial court erred by holding the prenuptial agreement was enforceable. She contends she did not enter into the premarital agreement voluntarily and that it was unconscionable.[5]

Virginia's Premarital Agreement Act (the Act) provides in relevant part as follows:

> A. A premarital agreement is not enforceable if the person against whom enforcement is sought proves that:
>
> 1. That person did not execute the agreement voluntarily; or
>
> 2. The agreement was unconscionable when it was executed and, before execution of the agreement, that person (i) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party; and (ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided.
>
> B. Any issue of unconscionability of a premarital agreement shall be decided by the court as a matter of law. Recitations in the agreement shall create a prima facie presumption that they are factually correct.

Code § 20-151.

[5] Although wife did not file a transcript or written statement of facts and signed the order as "seen and agreed (except for exceptions noted at trial)," we find that a transcript or written statement of facts is not indispensable to the determination of this assignment of error. See Anderson v. Commonwealth, 13 Va. App. 506, 508-09, 413 S.E.2d 75, 76-77 (1992); Turner v. Commonwealth, 2 Va. App. 96, 99-100, 341 S.E.2d 400, 402 (1986). Wife's arguments were preserved because the trial court recited wife's arguments as to voluntariness and unconscionability in the final order.

The trial court found that wife entered the premarital agreement voluntarily. The trial court examined the recitations in the premarital agreement, which "create a prima facie presumption that they are factually correct." Code § 20-151(B). In paragraph 15 of the premarital agreement, the parties acknowledged that they have been advised by counsel of their rights. In addition, they agree that "each executes the [Agreement] of his or her own accord, freely and voluntarily." Furthermore, they acknowledged that "each has provided the other with a fair and reasonable disclosure of his or her property." The premarital agreement stated that "each has adequate knowledge of the property and financial obligations of the other" and each party waived "further disclosure of the property or financial obligations of the other party beyond the disclosure provided in this Agreement." The parties agreed that the premarital agreement "was not procured by either party or any other person by fraud, duress, coercion, undue influence or overreaching." Lastly, the trial court specifically noted that the parties acknowledged that "this Agreement is being finalized near in time to: 1) their planned wedding date; and 2) the expiration of [wife's] Visa" and "notwithstanding these facts, the parties are entering into this Agreement freely and without any duress, coercion, undue influence or overreaching."

The trial court detailed the testimony of wife's former counsel who represented her during the negotiations of the premarital agreement. Wife's former counsel indicated that "he was not aware of any external pressure on Wife to sign the agreement." He explained the provisions of the premarital agreement to her and she "did not indicate that she did not understand everything, or needed to discuss any of the provisions." Wife was actively involved in the negotiations process and suggested changes to the premarital agreement. Therefore, wife did not present any evidence that she entered into the premarital agreement involuntarily.

The second prong to determine whether a premarital agreement is enforceable is for the trial court to determine whether it is unconscionable. Code § 20-151. There is a two-step test that

courts must apply in determining whether an agreement is unconscionable: "1) a gross disparity existed in the division of assets and 2) overreaching or oppressive influences." Galloway v. Galloway, 47 Va. App. 83, 92, 622 S.E.2d 267, 271 (2005) (citations omitted).

> Historically, a bargain was unconscionable in an action at law if it was "'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" Restatement (Second) of Contracts § 208 cmt. b (quoting Hume v. United States, 132 U.S. 406, 411 (1889)). If inadequacy of price or inequality in value are the only indicia of unconscionability, the case must be extreme to justify equitable relief. Smyth Bros. v. Beresford, 128 Va. 137, 169-70, 104 S.E. 371, 381-82 (1920).

Derby v. Derby, 8 Va. App. 19, 28, 378 S.E.2d 74, 78-79 (1989). "The inequality must be so gross as to shock the conscience." Smyth Bros., 128 Va. at 170, 104 S.E. at 382. "[G]ross disparity in the value exchanged is a significant factor in determining whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resultant agreement unconscionable." Derby, 8 Va. App. at 28, 378 S.E.2d at 79 (citation omitted).

Wife argues that there was gross disparity in the premarital agreement because although she was not working when the agreement was executed, she waived her right to spousal support and husband's retirement. However, the trial court found that wife benefited from the premarital agreement by "agreeing to waive certain rights in return for the prompt wedding she received, and an opportunity to obtain a Permanent Visa." The trial court held, "In this case, there was no evidence of gross disparity in the parties' assets. . . . [T]he parties merely retained the property they had when they came to the marriage."

In addition to a showing of gross disparity, "[c]ourts must view the apparent inequity in light of other attendant circumstances to determine whether the agreement is unconscionable and

should be declared invalid." Galloway, 47 Va. App. at 92, 622 S.E.2d at 271 (citing Derby, 8 Va. App. at 29, 378 S.E.2d at 79).

> "When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative."

Derby, 8 Va. App. at 28-29, 378 S.E.2d at 79 (quoting Pomeroy, Equity Jurisprudence § 928 (5th ed. 1941)).

Again, the trial court held, "There was no evidence of concealment, misrepresentation, or undue advantage on the part of husband. . . . Both [parties] had independent counsel, and the Court finds that there was fair and reasonable disclosure of assets." Contrary to wife's arguments, husband disclosed his assets and did not pressure wife to sign the premarital agreement. Wife contends she was pressured to sign the premarital agreement because her visa was going to expire. However, the trial court found that there was no evidence that wife faced immediate deportation. In fact, husband told wife to return to China and consider the marriage and agreement. Wife chose not to do so. She employed counsel and engaged in negotiations.

The trial court did not err in holding that the premarital agreement was enforceable, as wife did not meet her burden to prove that the agreement was unconscionable or that she entered into it involuntarily.

Attorney's fees

Husband asks this Court to award him attorney's fees incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Having reviewed and considered the entire record in this case, we hold that husband is entitled to a reasonable amount of attorney's fees, and we remand for the trial court to set a reasonable award of

attorney's fees incurred by husband in this appeal, including such fees incurred in the remand hearing.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed and remanded.