# CIRCUIT COURT OF THE CITY OF NORFOLK

Edna M. Holloman

    v.

Larry Pilkington,
Glenn H. Workman,
Priority Pest Services, L.L.C.

December 12, 2012

Case No. (Civil) CL11-6004

BY JUDGE LOUIS A. SHERMAN

This matter was tried before the Court as a bench trial on November 1, 2012. At the conclusion of plaintiff Edna Holloman's case, the defendants moved to strike Mrs. Holloman's evidence.

## I. *Plaintiff's Civil Conspiracy Claim*

For reasons stated in the record, the Court granted the defendants' motion as to Mrs. Holloman's claim of civil conspiracy, set forth in Count III of the Second Amended Complaint, citing *Griffith v. Electrolux Corp.*, 454 F. Supp. 29 (E.D. Va. 1978). In *Griffith*, the Court held that the plaintiff's claim for conspiracy to induce a breach of contract, where the claim was against a corporation, its agents, and officers, was "fatally flawed." The Court reasoned that a "corporation cannot conspire with itself, any more than a person can conspire with himself." *Id.* at 32. In the case at bar, Mrs. Holloman's claim of civil conspiracy is made against a corporate defendant, Priority Pest Services, L.L.C. (hereinafter "Priority Pest"), and against individual defendants Larry P. Pilkington and Glenn H. Workman, who were, at all relevant times herein, the principals and officers of Priority Pest. Therefore, Mrs. Holloman's civil conspiracy claim against all of the defendants fails, and defendants' motion to strike as to this count is hereby sustained.

## II. *Plaintiff's Claims against Defendant Larry Pilkington*

This Court also sustains Mr. Pilkington's motion to strike as to all of the counts alleged against him in plaintiff's Second Amended Complaint. Mr. Pilkington was, at all relevant times herein, an officer and principal of defendant Priority Pest. Mrs. Holloman presented no evidence that, at any relevant time, Priority Pest's status as a Virginia corporate entity had lapsed or that Mr. Pilkington had acted outside the scope of his corporate authority in his dealings with her.

## III. *Additional Background as to the Parties' Remaining Claims*

The Court took under advisement the defendants' motions to strike as to Mrs. Holloman's remaining claims of fraud, unjust enrichment, and unconscionable deed transfers.

At the conclusion of the defendants' evidence, their motions to strike were renewed as to Mrs. Holloman's claims of fraud, unjust enrichment, and unconscionable deed transfers. Additionally, individual defendant Mr. Workman submitted evidence (Defendant's Exhibit 3) as to his counterclaim against Mrs. Holloman for $15,000.00. This figure represents the amount that Mr. Workman expended for real estate taxes, insurance premiums, and maintenance expenses regarding the real property in question at 1158 George Street in Norfolk, Virginia (hereinafter "the George Street property"), following conveyance of that property to him on November 14, 2007, after which time, Mrs. Holloman resided in the property for approximately four years, without having to pay any rent to Mr. Workman or be responsible for any of the aforesaid property expenses. However, Mr. Workman's counterclaim, which was not opposed at trial by Mrs. Holloman, was conditioned upon this Court's determining that the George Street property should be conveyed by Mr. Workman to Mrs. Holloman based on her claim of unconscionable deed transfers.

Following the arguments of counsel, the Court granted the defendants' motion to strike as to Mrs. Holloman's claim of fraud against Priority Pest Services and the remaining individual defendant, Mr. Workman. The Court took under advisement the plaintiff's remaining claims of unjust enrichment and unconscionable deed transfers.

## IV. *Plaintiff's Claim of Fraud*

With regard to Mrs. Holloman's claim of actual fraud, she simply failed to meet her burden of proving "by clear and convincing evidence" any of the elements of actual fraud: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damages to the party misled." *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553

at 557-58 (1998) (citing *Evaluation Research Corp v. Alequin*, 247 Va. 143 (1994)).

Mrs. Holloman, who was eighty-nine years old at the time of her testimony in this case, was approximately eighty-four years old when all of the six home repair contracts in question (Plaintiff's Exhibit 5) in this case were entered into by Priority Pest and her in 2006 and 2007. No evidence of Mrs. Holloman's lack of mental capacity at the time the contracts in question were prepared and signed was introduced at the trial. However, Mrs. Holloman claims, primarily through her expert witness Johnny Majewski, a licensed contractor, that the defendants simply failed to perform the 2006 and 2007 contracted home repairs in a workmanlike manner and that Mrs. Holloman was substantially overcharged for the work performed by the defendants. However, defendant Mr. Workman testified that all the work set forth in the contracts in question was fully performed. His testimony was supported by the expert witness testimony of Jon Warner, Sr., also a licensed contractor, who testified that all the contracted work was fully performed in a workmanlike manner and that Mrs. Holloman was not overcharged by Priority Pest. Additionally, the defendants presented testimony from four factual witnesses who actually performed much of the work at Mrs. Holloman's home in 2006 and 2007 to corroborate that the work contracted for had actually been performed.

As the plaintiff has failed to prove by clear and convincing evidence that the defendants made false representations of any material facts, intentionally and knowingly, with intent to mislead the plaintiff, the Court will grant the defendants' motion to strike as to the claim of fraud set forth in Count II of Mrs. Holloman's Second Amended Complaint. *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553 (1998).

### V. *Plaintiff's Claim of Unjust Enrichment*

At the conclusion of the trial, the Court took under advisement Mrs. Holloman's claims of unjust enrichment, Count I of the Second Amended Complaint, and unconscionable deed transfers, Count IV of the Second Amended Complaint. With regard to her claim of unjust enrichment, Mrs. Holloman claims that, as a result of the six home repair contracts entered into by her and Priority Pest from January 23, 2006, through April 12, 2007, totaling $145,968.00, she ran out of funds to pay Priority Pest for all of the home repairs. The parties agree that Mrs. Holloman owed Priority Pest a balance of $45,330.03 for the contracted repairs. In order to satisfy this indebtedness, Priority Pest Services agreed, on April 26, 2007, to have Mrs. Holloman execute a Deed of Trust Note (Defendant's Exhibit 1) in the amount of $45,330.03, secured by Mrs. Holloman's home, the George Street property. The note was to be paid upon the sale of the property or the death of Mrs. Holloman, whichever event should occur first.

Additional home repairs to the George Street Property were apparently needed thereafter in October 2007, which Mrs. Holloman was unable to afford. However, no evidence was introduced by the parties as to the costs of repairs or what the repairs were for. On October 15, 2007, Mrs. Holloman and Priority Pest entered into a Purchase Agreement (Plaintiff's Exhibit 6) for the George Street property, and a Deed of Bargain and Sale (Plaintiff's Exhibit 2) was executed, whereby the George Street property was conveyed by Mrs. Holloman to Priority Pest for the stated consideration of $178,400.00 (set forth in the supporting Norfolk Circuit Court receipt and the accompanying Commonwealth of Virginia Cover Sheet-Form A, which are part of Plaintiff's Exhibit 2). No evidence was introduced that demonstrated the stated consideration was actually paid by Priority Pest to Mrs. Holloman. However, on October 15, 2007, a Certificate of Satisfaction (Plaintiff's Exhibit 13) was endorsed by Mr. Pilkington indicating that the Deed of Trust Note signed by Mrs. Holloman on April 26, 2007, in the amount of $45,330.03 (though stated in error as $54,330.03 in the Certificate of Satisfaction) had been paid and the lien created by the note was released. Again, however, no evidence of Mrs. Holloman having paid Priority Pest $45,330.03 to satisfy the original Deed of Trust Note (Defendant's Exhibit 1) was introduced by the parties during the trial.

Also on October 15, 2007, Priority Pest and Mrs. Holloman entered into a Lease Agreement (Plaintiff's Exhibit 7) whereby Mrs. Holloman was allowed to reside at the George Street property, without having to pay any rent or security deposit "until [her] death, relocation for a continuous period in excess of thirty (30) days, or in any event resulting in either full time or part time employment of a nurse or assistant hired to provide in-home medical care or living assistance due to any health, mental, or medical condition of tenant or in the event of tenant's disability whichever occurs first."

While Mrs. Holloman was responsible for all utility and telephone expenses, Priority Pest agreed in the lease to be responsible for payment of all real estate taxes, insurance premiums, and "all maintenance and repairs to the structure, appliances, and landscaping."

Thereafter, on November 14, 2007, Priority Pest conveyed the George Street property to Mr. Workman by a Deed of Gift (Plaintiff's Exhibit 3) recorded in the Norfolk Circuit Court on November 19, 2007, apparently as part of resolving legal differences that had arisen between Mr. Workman and Mr. Pilkington.

On November 19, 2007, Mrs. Holloman and Priority Pest entered into an "Acknowledgement" (Plaintiff's Exhibit 8) wherein the parties stipulated to the series of transactions which led to the conveyance of the George Street property by Mrs. Holloman to Priority Pest, which agreed to perform the unstated additional home repairs and to forgive Mrs. Holloman's indebtedness to Priority in the amount of $45,330.03.

It is not disputed that Mrs. Holloman continued to reside under the terms of the aforesaid lease for approximately four years, until she was compelled by poor health to move to North Carolina to reside with a family member.

Mrs. Holloman's claim for unjust enrichment must be denied. The Honorable Mary Jane Hall of this Court recently held that "[u]njust enrichment provides the basis for implying an equitable contract *where there is no express contract.*" *In re Chinese Drywall Cases*, 80 Va. Cir. 69, 83 (Norfolk 2010) (emphasis added), *citing Raven Red Ash Coal Co. v. Ball*, 185 Va. 534, 542-43 (1946). In cases where there *is* an express contract governing the parties' relationship, however, a claim for unjust enrichment cannot stand. *See Jones v. Bank of America Corp.*, 2010 U.S. Dist. LEXIS 142918, at 23 (E.D. Va. 2010).

In the present case there are numerous express contracts governing the parties' actions, including the six home repair contracts, the parties' Purchase Agreement for the George Street Property, their Deed of Bargain and Sale, their Lease Agreement, and their "Acknowledgment" agreement. Thus, principles of unjust enrichment simply do not apply, and Mrs. Holloman's claim for unjust enrichment must be dismissed. *See Lemon v. Hufford*, 77 Va. Cir. 386 (2009).

### VI. *Plaintiff's Claim of Unconscionable Deed Transfers*

In Count IV of the Second Amended Complaint, Mrs. Holloman claims that the deed transfers conveying the George Street Property from her to Priority Pest on October 15, 2007, and from Priority Pest to Mr. Workman, on November 14, 2007, were clearly unconscionable and should be set aside and that title to the property should be restored to her. In *Smyth Bros.-McCleary-McClellan Co. v. Beresford*, 128 Va. 137 (1920), the Supreme Court of Virginia stated, with regard to the doctrine of unconscionability, that "Cancelling an executed contract is an exertion of the most extraordinary power of a court of equity" and that "the power ought not to be exercised except in a clear case." *Id.* at 170. The Court further stated that a person who is not "under disability is entitled to dispose of his property in such a manner and upon such terms as he chooses . . . whether his bargains are wise, or discreet, or profitable, or unprofitable, or otherwise. . . ." *Id.* at 169-70. However, the Supreme Court provided for an exception when the bargain at issue is "one that no man in his senses and not under a delusion would make, on the one hand, and no fair man would accept, on the other. . . ." *Id.* at 170. The opinion further stated that, for a Court to undo such a bargain "[t]he inequality" of the transaction "must be so gross as to shock the conscience."

The Court of Appeals of Virginia expanded on the doctrine of unconscionability in the case of *Derby v. Derby*, 8 Va. App. 19 (1989), stating that "[unconscionability is] concerned with the intrinsic fairness of the terms of the agreement in relation to all attendant circumstances, including

the relationship and duties between the parties." *Id*. at 28. The Court further stated that a "party could be free of fraud but guilty of overreaching or oppressive conduct in securing an agreement [that] is so patently unfair that courts of equity may refuse to enforce it." *Id*. The Court in *Derby* identified an inadequacy of consideration as a prerequisite for operation of the doctrine of unconscionability, but stated that, "if inadequacy of price or inequality in value are the only indicia of unconscionability, the case must be extreme to justify relief." *Id*. The Court then went on to say that:

> Other unfair and inequitable incidents in addition to inadequacy, however, may more readily justify relief. When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, *undue advantage*, oppression on the part of one who obtains the benefit, or ignorance, weakness of mind, sickness, *old age*, incapacity, *pecuniary necessities*, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a Court to grant relief, defensive or affirmative.

*Id*. at 28-29 (emphasis added).

The Court of Appeals in later decisions has determined that a party seeking to set aside a contract or deed on the basis of unconscionability has the burden to prove that claim "by clear and convincing evidence," *Rogers v. Yarshaw*, 18 Va. App. 816, 822 (1994), and that burden includes "evidence [of] a great disparity in value" in the transactions in question. *Pelfrey v. Pelfrey*, 25 Va. App. 239, 245 (1997).

For the reasons which follow, this Court finds that Mrs. Holloman *has* proven by clear and convincing evidence that the deed transfers conveying the George Street property from her to Priority Pest on October 15, 2007, and from Priority Pest to Mr. Workman on November 14, 2007, were a product of overreaching and were unconscionable, and this Court will set aside those deed transfers and order that title to the George Street Property be returned to Mrs. Holloman, subject to certain liens which will be discussed more fully below.

It is clear from the record in this case that there was a *great* disparity in value and inadequacy of price involving the conveyances of the George Street property from Mrs. Holloman to Priority Pest and from Priority Pest to Mr. Workman. On October 15, 2007, Mrs. Holloman conveyed the George Street property with a clearly stated value of $178,400.00 (Plaintiff's Exhibit 2), which had *no* other existing liens on it (Plaintiff's Exhibits 9 and 11), in exchange for satisfying the April 26, 2007, Deed of Trust Note in the amount of $45,330.03. Moreover, the articulated basis of the conveyance of the property from Mrs. Holloman to Priority Pest was a set of alleged

"additional" through *unstated* "repairs" to the property in October 2007, for which there is no written estimate or contract in evidence. Additionally, Mr. Workman's own testimony at trial was that no cash exchanged hands in the real estate transaction between Mrs. Holloman and Priority Pest and that he was unable to recall the exact nature of the repair work to be performed at the George Street Property in October 2007. Finally, the November 14, 2007, conveyance of the George Street property from Priority Pest to Mr. Workman was by Deed of Gift (Plaintiff's Exhibit 3), so that no additional funds exchanged hands as a result of that conveyance.

Having found by clear and convincing evidence that there *was* in fact a great disparity in value and inadequacy of consideration regarding conveyances of the George Street property, the Court will now consider other unfair and inequitable incidents of the parties' transactions.

It is clear from the record, particularly from the testimony of Mrs. Holloman and her brother-in-law Earl Holloman, that Mrs. Holloman's late husband, Woodrow, was anxious and overly concerned about having the George Street property treated for wood-destroying insect and moisture damages. For example, on March 19, 1999, Mr. Holloman entered into an agreement (see Plaintiff's Exhibit 2) with Mr. Workman, who was then employed by Orkin, to have extensive termite and moisture barrier treatment performed at the George Street property.

Following Mr. Holloman's death in 1982, Mr. Workman continued to perform expensive repair work on the George Street property for the widow, Mrs. Holloman, although he was by then a principal with Priority Pest. *Prior to* the six contracts in question in this case, which started on January 23, 2006, Mrs. Holloman paid Mr. Workman $5,150.00 on November 29, 2005 (check number 1931), $9,956.00 on January 2, 2006 (check number 1942), and $9,956.00 also on January 2, 2006 (check number 1943). (Plaintiff's Exhibit 4.) These three checks totaled $25,062.00 for unspecified work on the George Street property, which is not supported by any written estimates or signed contracts in the trial record. The Court finds that these three transactions, when taken together with the six home repair contracts from January 23, 2006, through April 12, 2007, totaling an *additional* $145,968.00, amount to a pervasive pattern of overreaching and taking undue advantage by Priority Pest and Mr. Workman with regard to Mrs. Holloman, who at all relevant times was approximately eighty-four years old, a widow, and clearly overly concerned and anxious about maintenance issues involving her home, which was, in turn, based on her years of being married to Mr. Holloman, who was likewise overly anxious about avoiding wood-destroying insect and moisture damage to the home. This anxiety and concern on the part of Mrs. Holloman was clearly taken advantage of in an undue manner by Mr. Workman and Priority Pest, who together for years were well aware of the Hollomans' property maintenance

concerns, going back to March 1999, when Mr. Workman was employed by Orkin. (Plaintiff's Exhibit 5.)

This Court further finds that Priority and Mr. Workman took further undue advantage of Mrs. Holloman's "pecuniary necessity" and her obvious fear of losing her home when she had no money to pay for the unspecified home repairs in October 2007. Other avenues of payment for repairs, if in fact they were necessary, could have been explored, including a bank line of credit, a reverse mortgage, or even an installment payment plan for such an obviously excellent customer, without requiring Mrs. Holloman to simply convey her most valuable asset to Priority Pest. If, in fact, no other alternative financial arrangement could be made, the appropriate and fair conduct of Priority Pest should simply have been to walk away without taking advantage of this loyal customer.

Finally, with regard to the lease agreement between Priority Pest and Mrs. Holloman (Plaintiff's Exhibit 7), while Mrs. Holloman did reside in the George Street Property for approximately four years under the lease, its terms, *given her age, eighty-four, at the time of signing*, were clearly unconscionable. Paragraph 20 ("Default") of the lease in subsection (b) states:

> This lease shall terminate if: (i) Tenant employs either full-time, *or part-time*, a nurse or assistant hired to provide in-home medical care or living assistance due to *any* health, medical, or mental condition of Tenant or in the event of Tenant's disability, (ii) Tenant's death, or (iii) Tenant's relocation for continuous period in excess of thirty (30) days, whichever occurs first. . . .

(Emphasis added.)

The term providing for termination of the lease should the eighty-four-year-old Mrs. Holloman require the assistance of even a part-time nurse or assistant for any health issue, given her age at the time of signing, is simply unconscionable and shocking to this Court's conscience. It is quite normal for older citizens, such as Mrs. Holloman, to continue to reside at home for as long as they possibly can, with occasional professional assistance. The aforesaid lease termination provision, however, is so one-sided, inequitable, extreme, and unfair, especially since the George Street property was Mrs. Holloman's home for many years, that this Court finds equitable relief to be warranted in this case.

For all of the foregoing reasons, this Court will grant Mrs. Holloman the relief she seeks, pursuant to her claim for unconscionable deed transfers as to defendants Priority Pest and Mr. Workman.

## VII. *Counterclaim of Glen Workman and Second Deed of Trust Lien of Priority Pest*

The parties did not dispute the counterclaim of Mr. Workman in the amount of $15,000.00, which this Court will allow. Further, the Court will also preserve the original lien of Priority Pest in the amount of $45,330.03, as the parties did not dispute this balance owed by Mrs. Holloman to Priority Pest as of April 26, 2007. However, while the Court is allowing both the counterclaim of Mr. Workman and the lien of Priority Pest in this matter, these amounts, *without any interest*, will be due to Mr. Workman and to Priority Pest respectively upon either the sale of the George Street Property or the death of Mrs. Holloman, whichever should occur first. Counsel shall prepare the appropriate deed of conveyance, as well as the deed of trust and deed of trust note, to reflect the Court's rulings.

## VIII. *Conclusion*

For the reasons previously set forth in this letter opinion, this Court is dismissing all of Mrs. Holloman's claims against the defendants, except for the portion of her claim dealing with the unconscionability of the parties' deed transactions.

Further, the parties shall bear their own attorney's fees, but court costs and the cost of recording the deed from Mr. Workman to Mrs. Holloman and the deed of trust shall be shared equally between Mr. Workman and Priority Pest.