# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

John W. Hayden

v.

Susan A. Hayden

January 28, 2000

Case No. CH98-793

BY JUDGE WILLIAM H. LEDBETTER, JR.

The validity of a property settlement agreement is the issue for adjudication in this divorce case.

*Background Facts*

Mr. and Mrs. Hayden were married in 1989. Two children were born of the marriage: Melissa, 9, and Ashley, 6.

In April of 1998, Mrs. Hayden approached Mr. Hayden about a separation. They discussed the matter on and off for several weeks, culminating in an agreement dated June 23, 1998. Mr. Hayden typed the agreement, consisting of two pages, after consulting with an attorney. He presented the document to Mrs. Hayden and the parties "sat down at the table and went over it." The next day, they signed the agreement together before a notary public.

Pursuant to the agreement, Mrs. Hayden received $1,800.00 in cash from the parties' savings account, a 1987 Mazda pickup truck, and several household items (dresser, television, VCR, and miscellaneous kitchen utensils). Mr. Hayden received the marital home, a 1997 Dodge Caravan, and the balance of the parties' marital property.

At the time, the parties were still sleeping in their marital bed. After the agreement was signed, Mrs. Hayden moved out of the bedroom and began sleeping in another part of the house.

Two days after the agreement was signed, Mr. Hayden presented to Mrs. Hayden a deed, prepared by an attorney, by which she conveyed to him her interest in the marital home. They signed the deed in the attorney's office.

After the exchanges were made, Mrs. Hayden left the marital home. The parties have lived separately since August 1, 1998.

During the marriage, Mr. Hayden, 35, worked as branch manager for a local bank. Mrs. Hayden cleaned houses. In addition, she volunteered as an EMT for a rescue squad.

Now, Mrs. Hayden lives in Ruther Glen. She is employed at a mailing service. Mr. Hayden resides in the former marital residence and continues to work at the bank. The children divide their time between the two residences.

Mr. Hayden instituted this divorce suit in December of 1998, alleging desertion. Mrs. Hayden answered. (Interestingly, neither party made reference to their property settlement agreement in their pleadings. Both sought relief under the equitable distribution statute, Virginia Code § 20-107.3.)

On February 1, 1999, the parties reached a *pendente lite* agreement. They agreed to a joint custody arrangement. Mr. Hayden agreed to pay child support of $252.00 a month to Mrs. Hayden. Mr. Hayden agreed to pay $1,000.00 in exchange for Mrs. Hayden's "complete and final waiver" of spousal support. The parties reached other agreements relating to the children. The agreement was memorialized by decree entered on April 5, 1999.

Depositions were taken on October 13, 1999. By agreement, the parties submitted memoranda in support of their respective positions concerning the validity of the property settlement agreement. This opinion addresses that issue.

### *Applicable Legal Principles*

Marital property settlements, or separation agreements, entered into by competent parties upon valid consideration for lawful purposes are favored in the law and will be enforced unless their illegality is clear and certain. *Cooley v. Cooley*, 220 Va. 749, 263 S.E.2d 49 (1980). The party seeking to void or rescind such an agreement has the burden of proving its invalidity by clear and convincing evidence. *Gill v. Gill*, 219 Va. 1101, 254 S.E.2d 122 (1979).

In this case, Mrs. Hayden contends that the parties' agreement is void and unenforceable because it was procured by fraud, it lacks consideration, it is

unconscionable, it is premised on mutual mistake, and it is too indefinite and uncertain.

Finding that the agreement is unconscionable and, further, that it is fatally incomplete, the court need not address the other assertions.

## Terms of the Agreement

The agreement, prepared by Mr. Hayden after consulting an attorney, is labelled "Separation Agreement." In what may be called a preamble, the agreement provides:

> The intent of both of us is to put in writing those things we deem necessary and work out the day to day details not included in this agreement as they may arise.

The agreement contains eleven numbered paragraphs. The first four paragraphs and paragraph 8 concern the care and custody of the children. Paragraph 5 deals with temporary health insurance coverage for Mrs. Hayden. In paragraph 6, the parties divide their motor vehicles: Mrs. Hayden got the 1987 Mazda pickup; Mr. Hayden received the 1997 Dodge Caravan and agreed to pay the loan against that vehicle. Mrs. Hayden agreed to deed the marital home to Mr. Hayden in paragraph 7. In paragraph 9, the parties divide their joint savings account, from which Mrs. Hayden received $1,800.00. The parties acknowledge that that was done on June 20, 1998. Mr. Hayden assumes sole responsibility for all "joint debt" in paragraph 10.

Finally, in paragraph 11, the parties agreed:

> Other items that might arise during this separation will be agreed upon by [the parties]. It is both of our intentions to keep this separation amicable and out of the courts.

## The Parties' Assets and Debts

At the time the parties signed the agreement, they owned 2.6 acres, with a single-family dwelling, on Church Pond Road. The land was part of a larger tract given to Mr. Hayden and his brother by their mother in 1986. The brothers divided the tract in 1995. In 1996, Mr. and Mrs. Hayden built a house on the 2.6 acres allotted to Mr. Hayden with a construction loan, later converted to a conventional mortgage.

12

Also in 1996, the parties sold their jointly-owned townhouse in Breezewood Subdivision. To sell that property, the parties had to pay a "deficiency" of approximately $11,000.00, which, according to the evidence came primarily from a $26,000.00 inheritance that Mrs. Hayden had received from her grandmother.

The marital real estate is valued at $150,000.00, of which $28,000.00 is assigned to the land. The land with the house has an equity of approximately $45,000.00.[1]

In addition, Mr. Hayden had a 401K, an annuity with Monumental Life, an employee stock ownership plan, shares of Mercantile Bank stock, and a retirement plan with his employer. In addition, the parties owned furniture and household furnishings and savings bonds that they had purchased for their children. According to the evidence, the value of these marital properties approached $90,000.00 to $100,000.00.

The only evidence regarding marital debts and liabilities, which Mr. Hayden assumed in the agreement, involves the mortgage on the home and a loan against the Dodge Caravan. Both of those properties were assigned to Mr. Hayden in the agreement. Apparently, Mr. and Mrs. Hayden had no other significant debt, such as credit cards or unsecured loans.

## *Unconscionability*

An unconscionable agreement is one that is not guided or restrained by conscience. It is unreasonable, excessive, or oppressive, or so shockingly one-sided that it should not be enforced.

Generally, fraud and unconscionability go hand and hand. However, the two principles are separate and distinct. Fraud is generally determined by a review of the parties' conduct in relation to their legal and equitable duties to one another. Unconscionability is more concerned with the intrinsic fairness of the terms of the agreement in relation to all attendant circumstances, including the relationship and duties between the parties. A party may be free of fraud but guilty of overreaching or oppressive conduct in securing an agreement which is so patently unfair that courts may refuse to enforce it. *Derby v. Derby*, 8 Va. App. 19, 378 S.E.2d 74 (1989).

It has been said that an agreement is unconscionable if no person in his senses would make it on the one hand and no fair and honest person would

---

[1] After the separation, Mr. Hayden borrowed $13,000.00 on a home equity loan. This second mortgage is not considered in arriving at the equity value.

accept it on the other. *Hume v. United States*, 132 U.S. 406, 33 L. Ed. 393, 10 S. Ct. 134 (1889).

While gross disparity in the value exchanged is a significant factor in determining unconscionability, other unfair and inequitable incidents are usually involved. Those incidents include concealments, misrepresentations, undue advantage, ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessity, and the like. Pomeroy, *Equity Jurisprudence*, § 928 (5th ed. 1941), quoted in *Derby, supra*.

It is generally held that unconscionability assumes heightened importance in marital separation agreements. While there may be no fiduciary relationship between the parties, their marital relationship is particularly susceptible to overreaching. Further, it is said that unlike commercial contracts, the state has an interest in the terms and enforceability of marital separation agreements. Clark, *The Law of Domestic Relations*, § 19.2 (1987), quoted in *Derby, supra*.

In this case, the disparity in value exchanged is extreme. Of all the parties' property, including $45,000.00 equity in the home, Mrs. Hayden received $1,800 cash, an eleven-year-old pickup truck, and a small number of household items that she took with her. Although Mr. Hayden assumed all marital debt, no marital debt is mentioned in the evidence except those debts associated with property (i.e., the marital residence and the Dodge Caravan) that Mr. Hayden received under the terms of the agreement.

In addition to the gross disparity of value exchanged, the evidence discloses that Mrs. Hayden was ignorant of the assets accumulated during the marriage that are associated with Mr. Hayden's employment. Even assuming that, according to Mr. Hayden, she did know of the existence of these things, the court is convinced that her knowledge was, at best, vague and uncertain, and she had no idea of the value of the assets.

Next, it is significant that Mr. Hayden consulted an attorney before he prepared the agreement. Mrs. Hayden did not consult an attorney during negotiations nor did she have an attorney review it before she signed it.

Another significant factor is Mr. Hayden's superior knowledge of the parties' financial matters. Admittedly, he handled the household finances. He was, and is, a bank officer. He knew and understood financial matters in general and the financial matters of the parties specifically, whereas Mrs. Hayden merely gave her paychecks (as well as her inheritance check) to Mr. Hayden and knew very little about their assets and liabilities.

Finally, the court notes that the terms of this agreement were being discussed, perhaps "negotiated," while the parties were still living together, even sleeping in the same bed. Although Mrs. Hayden approached Mr. Hayden about a separation, she was not the driving force behind the written

14

agreement. Mr. Hayden wanted the agreement; he consulted an attorney, typed it, and presented it to Mrs. Hayden. They discussed it. The next morning, it was signed. Two days later, Mrs. Hayden went with Mr. Hayden to an attorney's office to transfer her interest in the real estate. Although the agreement provides that Mr. Hayden would assume the parties' "joint debt," the deed is not a deed of assumption. There is no evidence that Mr. Hayden ever relieved Mrs. Hayden of liability for the mortgage or refinanced the obligation. During all this time, the parties were living together with their children. This circumstance distinguishes this case from those in which a separation agreement is negotiated after separation or while the parties are adversarial in effectuating a separation. See, e.g., *Fields v. Fields*, Caroline County Circuit Court, No. 86-C-68 (Op. Ltr. 5/2/90).

Because of the gross disparity in value exchanged, combined with the factors discussed above, the court is of the opinion that Mrs. Hayden has proven by clear and convincing evidence that the agreement is unconscionable.

*Incompleteness and Indefiniteness*

The fundamentals of a binding contract apply to separation agreements. One of the elements is completeness and reasonable certainty. Completeness denotes that the contract embraces all the material terms. Certainty denotes that each of those terms is expressed in a sufficiently exact and definite manner. See 4B M.J., *Contracts*, § 27. An incomplete contract is one from which material terms have been entirely omitted. An indefinite contract is one which may contain all the material terms but they are expressed in inexact, uncertain, or obscure language such that the parties' bargain cannot be ascertained. In some cases involving indefiniteness based on ambiguity, the ambiguity may be explained in light of surrounding circumstances and the agreement will be enforced.

Here, by its terms, the only articles of property addressed in the agreement are the parties' two motor vehicles, the marital real estate, and the joint savings account. Nothing is said, directly or by inference, about the various other items of marital property discussed above, except that in paragraph 11 it is said that "other items that might arise during this separation will be agreed upon by [the parties]."

This is not a mere ambiguity that can be explained by parol evidence. This case involves an incomplete contract — i.e., an agreement that is missing material terms. For this additional reason, the agreement is invalid.

*Conclusion*

The parties' separation agreement is invalid and unenforceable.

Where a contract is voided, rescinded, or set aside, the parties are most often placed in the status quo ante. In the context of separation agreements, restoring the parties to status quo ante is sometimes difficult because of their partial performance. In such cases, however, an equitable distribution hearing serves to remedy any interest lost by the parties due to the invalidation of the agreement. Any monetary loss can be adjusted through an equitable distribution award. See *Webb v. Webb*, 16 Va. App. 486, 431 S.E.2d 55 (1993). Thus, Mr. and Mrs. Hayden will be restored to their status quo ante to the extent reasonably possible and demanded by the equities of the case.