COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Coleman and Elder
Argued at Salem, Virginia


KATHY R. GOBBLE McELRAFT

v.          Record No. 0124-98-3

DON L. McELRAFT

MEMORANDUM OPINION[*] BY
JUDGE LARRY G. ELDER
NOVEMBER 24, 1998

FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
Charles H. Smith, Jr., Judge

W. R. McCall for appellant.

E. Craig Kendrick (Morefield, Kendrick,
Hess & Largen, P.C., on brief), for appellee.


Kathy R. Gobble McElraft (wife) appeals from the trial court's entry of an award of divorce to Don L. McElraft (husband).  On appeal, she contends the trial court erred in ruling that the parties' real property and residence became husband's separate property pursuant to a deed of gift and that the parties' separation agreement was valid.  For the reasons that follow, we affirm the rulings of the trial court.

I.

FACTS

The parties married in 1974 and separated on June 29, 1995.  During the marriage, they acquired two tracts of land which they operated as a cattle farm.  Both parties also were employed off the farm.  On September 1, 1994, the parties executed a deed of

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

gift, as grantors, transferring the two parcels of land to husband. These parcels were the major marital assets.

On June 29, 1995, the parties executed a separation agreement and began living separate and apart. That agreement provided for the mutual relinquishment of various property and spousal support rights. It specifically mentioned the land transferred to husband by deed of gift of September 1, 1994, stating that "wife agrees to release and relinquish to husband all right, title and interest she has in the real property . . . described in [that deed]."

The agreement specifically recited that the parties "have had the opportunity to obtain independent legal advice with regard to this Agreement"; "have entered into this Agreement freely and voluntarily, without undue influence or coercion, and . . . have read and understand the terms hereof." The agreement also provided that each party entered into the agreement "with full knowledge . . . of the extent and probable value of all the property in the estate" of the other. Finally, the agreement acknowledged that husband was represented by an attorney, who had drafted the separation agreement, and that wife was not represented.

On May 26, 1996, wife filed a bill of complaint for divorce, equitable distribution, and spousal support. Husband contended that the separation agreement barred the court's consideration of the equitable distribution and support issues. Wife sought

recision of the deed of gift and separation agreement, alleging the documents were unconscionable and had been procured through "duress and fraud."

The court held a hearing on the issue on November 1, 1996. Wife testified, presented the testimony of another witness,[1] and introduced into evidence a chart showing her understanding of the parties' property ownership, value and distribution as effected by the separation agreement.  She estimated the value of the real and personal property received by husband at $267,000.  She estimated the value of property she received, less the debt she assumed, at about $1,000 plus the value of being allowed to remain in the marital home for eight months.  Husband did not testify and presented no evidence.

By letter opinion of February 24, 1997, the trial court held that the deed of gift changed the character of the property from marital to separate and that the deed and separation agreement were valid.  Wife filed a motion to reconsider, which was denied.  On June 12, 1997, the trial court entered an order embodying both rulings.

On June 23, 1997, wife testified by deposition regarding the execution of the deed of gift and separation agreement.  Husband objected to inclusion of the deposition in evidence on the ground

_____

[1]Wife contends on brief that "the trial court declined to hear evidence as to the reasons why [wife] was afraid not to sign the documents."  However, the record does not contain a transcript of this proceeding, and the statement of facts provides no support for wife's assertion.

that the trial court had already ruled on the validity and effect of those documents.  The trial court, in signing the parties' written statement of facts for appeal, agreed.  It ruled that wife had had the opportunity to present relevant testimony at the ore tenus hearing on November 1, 1996 and that her deposition, taken after the court had already ruled on the validity of the deed of gift and separation agreement, was not a part of the record.

On December 19, 1997, the trial court entered the final decree of divorce into which it incorporated the separation agreement.

II.

ANALYSIS

Wife contends that her execution of the deed of gift on September 1, 1994 was insufficient to convert the parties' real property, including their residence, into husband's separate property.  She also contends that the separation agreement, in which she again "agree[d] to release and relinquish to husband all right, title and interest" in the real property and residence is invalid because it was procured by duress and constructive fraud and is unconscionable.  Assuming without deciding that the deed of gift was insufficient to convert the real property and residence into husband's separate property under McDavid v. McDavid, 19 Va. App. 406, 451 S.E.2d 713 (1994), we nevertheless conclude that the trial court did not err in holding the

- 4 -

separation agreement valid.

As wife concedes, she bore the burden of proving by clear and convincing evidence that the separation agreement was invalid. See, e.g., Derby v. Derby, 8 Va. App. 19, 26, 378 S.E.2d 74, 77 (1989). We review the evidence in the light most favorable to husband as the prevailing party. See id. However, because neither wife's deposition of June 23, 1997, nor a transcript of the November 1, 1996 ore tenus hearing is part of the record on appeal, we have little evidence to review beyond the separation agreement itself.

Wife alleges first that the agreement was procured by duress and constructive fraud. "Constructive fraud is a '[b]reach of legal or equitable duty which, irrespective of moral guilt, is declared by law to be fraudulent because of its tendency to deceive others or to violate confidence.'" Id. at 26, 378 S.E.2d at 78 (quoting Wells v. Weston, 229 Va. 72, 77, 326 S.E.2d 672, 675-76 (1985)). "[It] is generally determined by reviewing the conduct of the parties in relation to their legal and equitable duties to one another . . . ." Id. at 28, 378 S.E.2d at 78. Here, as set out above, the record contains very little evidence of the parties' conduct to review. It indicates only that the parties executed the property settlement agreement at a time when husband was represented by counsel and wife was not.

Wife contends that husband owed her a fiduciary duty by virtue of their marital status until they separated and hired

attorneys to negotiate a settlement of their property rights. We disagree. As we noted in Derby, the triggering event is not the bilateral hiring of attorneys; rather it is a change in the nature of the relationship such that "the parties are dealing at arm's length, whether or not they are represented by counsel." Id. at 27, 378 S.E.2d at 78 (citing Barnes v. Barnes, 231 Va. 39, 43, 340 S.E.2d 803, 805 (1986)). In negotiating an agreement to settle property rights in anticipation of separation or divorce, the parties were dealing at arm's length regardless of whether wife had hired an attorney. See Drewry v. Drewry, 8 Va. App. 460, 470, 383 S.E.2d 12, 16 (1989) (holding that wife's failure to retain counsel to represent her in settlement negotiations and signing did not invalidate separation agreement); see also Pillow v. Pillow, 13 Va. App. 271, 275, 410 S.E.2d 407, 409 (1991).

That the parties may have lived together as husband and wife until the day they signed the separation agreement also does not negate a finding that they were dealing at arm's length in signing the separation agreement. That document sets out in plain terms that it is a "SEPARATION AGREEMENT" entered into due to "irreconcilable difficulties" and that the parties have been "living separate and apart" since the signing of the agreement and "mutual[ly] desire . . . to adjust, terminate and settle all [property] rights." In addition, the agreement states that the parties "have entered into this Agreement freely and voluntarily, without undue influence or coercion." Therefore, under the facts

and circumstances set out in the record, viewed in the light most favorable to husband, we cannot say that the trial court erroneously rejected wife's contention that husband's actions in allowing her to sign the separation agreement while unrepresented amounted to constructive fraud or duress.

We also reject wife's contention that the separation agreement was unconscionable because it contained no evidence of disclosure of the marital assets and "it divests her of practically all interests in the marital estate." Whereas fraud relates to the parties' conduct,

> unconscionability is more concerned with the intrinsic fairness of the terms of the agreement in relation to all attendant circumstances, including the relationship and duties between the parties. . . . If inadequacy of price or inequality in value are the only indicia of unconscionability, the case must be extreme to justify equitable relief.

Id. at 28, 378 S.E.2d at 78-79. Code § 20-151, which applies to marital agreements executed pursuant to Code § 20-155, sets out certain affirmative defenses to the enforceability of such agreements. It provides that

> A. [A marital] agreement is not enforceable if the person against whom enforcement is sought proves that

>> \*    \*    \*    \*    \*    \*    \*

> 2. The agreement was unconscionable when it was executed and, before execution of the agreement, that person (i) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party; and (ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial

> obligations of the other party beyond the disclosure provided.
> B. Any issue of unconscionability of a premarital agreement shall be decided by the court as a matter of law. <u>Recitations in the agreement shall create a prima facie presumption that they are factually correct.</u>

Code § 20-151 (emphasis added).

Here, the separation agreement itself recites that each party entered into the agreement "with full knowledge . . . of the extent and probable value of all the property in the estate" of the other. Under Code § 20-151, this recitation constituted <u>prima</u> <u>facie</u> evidence of such knowledge, and wife has presented no evidence to rebut that presumption.

Therefore, the only evidence of unconscionability is the inequality in value of the property received by the parties under the agreement. On the record before us, we cannot conclude that the inequality was extreme enough to compel the trial court to provide equitable relief. A court "'cannot relieve one of the consequences of a contract merely because it was unwise' [and] '[it] is not at liberty to rewrite a contract simply because the contract may appear to reach an unfair result.'" <u>Rogers v. Yourshaw</u>, 18 Va. App. 816, 823, 448 S.E.2d 884, 888 (1994) (citations omitted). Here, although husband received the bulk of the marital estate, including the parties' real property and residence, the record on appeal contains no evidence regarding the source of the assets used to acquire and operate that property and no evidence regarding the parties' nonmonetary

contributions to the property's maintenance and operation. In the absence of such evidence and in light of evidence that wife worked outside the home during the marriage, we cannot conclude that the trial court erred in rejecting wife's claim that the separation agreement was unconscionable.

For the foregoing reasons, we affirm the trial court's rulings.

<u>Affirmed</u>.