COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:    Judges Chaney, Raphael and Callins
Argued by videoconference


JENNIFER M. PAYNE

                                                    OPINION BY
v.       Record No. 0065-22-2       JUDGE DOMINIQUE A. CALLINS
                                                    MAY 9, 2023

DAVID RAY PAYNE


FROM THE CIRCUIT COURT OF HANOVER COUNTY
Theodore J. Markow, Judge Designate

Theresa Rhinehart for appellant.

No brief or argument for appellee.


On December 16, 2021, the Hanover County Circuit Court entered a final decree of

divorce between Jennifer M. Payne ("wife") and David Ray Payne ("husband").  On appeal, wife

contends that the trial court abused its discretion by (1) finding that she deserted the marriage,

(2) denying her an immediate award of permanent spousal support, and (3) crediting husband for

all mortgage and home equity line of credit (HELOC) payments he made from the date of

separation to the date of the trial court's letter opinion.  We disagree and hold that the trial court

did not err in its judgment.

BACKGROUND[1]

In March 2020, wife filed a complaint seeking a divorce *a vinculo matrimonii* from

husband based on the parties' separation for more than one year.  Husband filed an answer and

---

[1] "When reviewing a trial court's decision on appeal, we view the evidence in the light
most favorable to the prevailing party, granting it the benefit of any reasonable inferences."
*Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021) (quoting *Congdon v. Congdon*, 40 Va. App.
255, 258 (2003)).  Husband is the prevailing party in this case.

counterclaim, contesting wife's grounds for divorce and asserting that wife deserted the marriage. In her answer to husband's counterclaim, wife denied the claim that she had abandoned the marriage. During the pendency of the proceedings, the trial court ordered husband to pay to wife $1,000 per month as *pendente lite* spousal support.

In a pleading titled "Equitable Distribution and Spousal Support Factors," wife listed certain marital assets and debts and asserted her monetary and non-monetary contributions to the marriage. Relying on Code § 20-107.1, wife's pleading requested $1,000 per month in permanent spousal support. Among other things, wife explained her decision to leave husband:

> As our children got older, it seemed we grew apart. We spent less and less time together. It seemed that we would never talk. Our separation took several months. I was seeing a psychiatrist for depression. I wanted to go to couple's counseling. I told my husband that if he would not go, I was going to leave him. I brought him different counselors' information, but he refused to go.

At the equitable distribution trial, both parties testified and presented evidence. Wife testified that she and husband wed while husband was enrolled at Old Dominion University. During that period, wife worked at a bank. The parties used husband's student loan proceeds to pay rent, while wife's earnings were used to pay family bills and entertainment costs. After husband graduated from college, the parties moved to Richmond. Following the birth of their first child, wife became a stay-at-home mother and husband worked outside the home. When the parties' children entered preschool, wife taught at the preschool, securing free daycare tuition for the children. One year after the parties' youngest child began primary school, wife became a substitute teacher and then a full-time employee of Henrico County Public Schools. At the time of trial, wife was an office assistant and earned approximately $35,700 annually.

During the marriage, wife's earnings went into a joint account shared with husband, and the parties used the funds for family purposes. At the time of the hearing, husband earned just over

- 2 -

$132,000 per year and had received an annual bonus in 2020 totaling approximately $18,000. Wife testified that the parties enjoyed a comfortable standard of living during the marriage. Husband disagreed, testifying that the parties lived paycheck to paycheck, refinanced the HELOC on the marital home, and regularly consolidated credit card debt.

Toward the end of 2018, wife began sleeping in a spare bedroom. During this time, wife also struggled with anxiety and depression upon the children moving out of the marital home. Wife, who was accustomed to having a home "full of kids," was left "alone a lot at the house." She suffered panic attacks. She testified that her "relationship with [husband] [got] worse" and acknowledged using alcohol to soothe her anxiety and depression. Wife also testified that her trust in husband eroded after discovering that there had been "females" at a bachelor party husband attended.

In early January 2019, wife left the marital home to move in with her parents. She told husband that she no longer felt comfortable in the marital home and "just needed to leave." A short time later,[2] wife returned to the marital home and resumed living in the spare bedroom, as she had done before she moved out. In the same month, wife expressed a desire to attend couples counseling with husband. She told husband that if "they didn't get things settled by then," she would move out. At trial, wife acknowledged that she considered her proposal an "ultimatum" to which husband "just didn't respond."

On April 1, 2019, husband helped wife move out of the marital home into an apartment of her own. Wife eventually moved out of the apartment, as she could no longer afford it, and back in with her parents, where she remained through the time of the equitable distribution trial. According

---

[2] At trial, husband testified that when wife first left the marital home, she was gone for "several weeks." Wife testified that she moved into her parents' home for "two or three days."

to husband's testimony, he neither told nor forced wife to leave the marital home, nor did he request a divorce.

At trial, wife introduced into evidence her income and expense worksheet but acknowledged that she had not incurred many of the expenses listed. Wife testified that the statement reflected projected, rather than her current, expenses, including an apartment that she could not then afford. Wife testified that she "sometimes" paid $400 in monthly rent to her parents, but that she occasionally could not pay due to medical bills. Wife further testified that after husband began paying temporary spousal support, she made regular rent payments to her parents. Wife's grocery expense was $200 per month, not $400 per month as reflected on her income and expense worksheet. She also included several other items on the worksheet that did not match her current spending patterns and expenses. Wife argued that she needed spousal support because her income was far lower than husband's, that the parties had a long-term marriage, and that husband was able to continue doing "fun things" that were part of their married lifestyle that she could no longer afford.

Husband testified that his earnings were insufficient to pay wife any amount of spousal support and that he borrowed money to pay part of the temporary spousal support amount. After wife moved out of the marital home, husband became solely responsible for the mortgage and HELOC payments, as well as other marital debt. Husband argued that he could not continue paying spousal support because of the parties' marital debts. He testified that he was also responsible for their adult children's student loans if the children defaulted. While acknowledging that he had played golf, gone hunting, and travelled since the separation, husband stated that the vacations were paid for with his annual bonus.

The parties stipulated that since the separation, husband had paid the mortgage and HELOC principal down by $14,321.86. At trial, wife argued that the trial court should limit husband's

separate credit for the mortgage paydown to $7,000 because the parties benefitted equally from his payments during their separation period. Husband argued that the $14,321.86 represented only the mortgage and HELOC principal and he had actually paid approximately $40,000, including interest. Husband sought credit for the full principal amount that he paid on the loans during the separation period. He also argued that because wife abandoned the marriage, she was not entitled to spousal support and further, he could not afford to pay any amount of support.

After considering the evidence and argument, the trial court took the matter under advisement and subsequently issued a letter opinion. The trial court granted husband a divorce on the grounds that wife willfully deserted the marriage, finding that "[n]either Wife nor Husband testified as to Wife's reason for leaving the marriage" and that "Husband testified that he never wanted Wife to leave." The trial court considered the factors enumerated in Code § 20-107.1(E), including the fault grounds for divorce, which it considered "heavily." The trial court found that wife did not demonstrate a present need for spousal support, discrediting wife's income and expense worksheet because she testified that many of the items "were not reflective of her current cost of living" and did "not accurately reflect her current needs." However, the trial court granted wife a reservation of spousal support in the future. After reviewing the factors enumerated in Code § 20-107.3(E), including wife's desertion, the trial court determined that husband was "entitled to a credit in the amount he has paid toward the [m]ortgage and H[ELOC] from the date of separation to the date of this opinion." The trial court ordered that husband's separate credit be paid from wife's equitable share of the marital home proceeds.

The trial court also observed that "a large amount of debt" had been acquired during the marriage. Given "the large disparity in income" between wife and husband, its decision not to award spousal support, and the financial resources available to husband, the trial court ordered husband to continue to make the debt payments.

Wife filed a motion for reconsideration, arguing that the trial court abused its discretion in finding that wife deserted the marriage and granting husband a divorce on that ground. Wife contended that her departure did not constitute "abandonment, [but] was for her to get better mentally." Wife also argued that the trial court erred in failing to award her spousal support and in giving husband credit for the entire principal amount he paid toward the mortgage and HELOC. After hearing the parties' arguments, the trial court denied wife's motion and entered the final divorce decree. The decree stated that husband's credit for the entire amount he paid toward the mortgage and HELOC should be deducted "prior to the distribution of the equity in the marital residence." Wife appeals.

## ANALYSIS

### I. The trial court did not err in finding that wife deserted the marriage.

Wife argues that the trial court abused its discretion in finding that she willfully deserted the marriage and claims that the evidence, instead, supported a decree of divorce based on one-year separation grounds. She asserts that she did not desert the marriage but had to leave the marital home to protect her mental health.

"[W]here dual or multiple grounds for divorce exist, the trial [court] can use [its] sound discretion to select the grounds upon which [it] will grant the divorce." *Williams v. Williams*, 14 Va. App. 217, 220 (1992) (quoting *Lassen v. Lassen*, 8 Va. App. 502, 505 (1989)). That is, there is no mandate for a trial court "to give precedence to one proven ground of divorce over another." *Id.* (quoting *Robertson v. Robertson*, 215 Va. 425, 426 (1975). "A trial [judge's] determination of matters [that lie] within [the trial judge's] discretion is reversible on appeal only for an abuse of that discretion." *Hughes v. Hughes*, 33 Va. App. 141, 146 (2000) (alterations in original) (quoting *Farley v. Farley*, 9 Va. App. 326, 328 (1990)). "Furthermore, a trial judge's factual finding will 'not be set aside unless plainly wrong or without evidence to support it.'" *Id.* (quoting *Farley*, 9

Va. App. at 328). However, this Court reviews de novo all issues of law, including those involving "examination of the proper interpretation and application of [Code § 20-91(A)(6)]." *Dixon v. Dixon*, 71 Va. App. 709, 718 (2020).

### a. Wife broke off marital cohabitation with the intent to end the marriage.

Code § 20-91(A)(6) provides that "[w]here either party has . . . willfully deserted or abandoned the other, [a] divorce may be decreed to the innocent party after a period of one year from the date of such act."[3]  Notwithstanding Code § 20-91(A)(6)'s use of the disjunctive "or" to distinguish "desertion" and "abandonment," our Supreme Court has found that "[i]n the domestic relations context, 'abandonment' is generally used synonymously with 'desertion.'" *Purce v. Patterson*, 275 Va. 190, 195 (2008).  Desertion or abandonment is defined "as 'a breach of matrimonial duty—an actual breaking off of the matrimonial cohabitation coupled with an intent to desert in the mind of the deserting party,'" *id.* (quoting *Petachenko v. Petachenko*, 232 Va. 296, 298-99 (1986)), and is usually effected when a party physically leaves the marital home and does not return.  We have held, however, that a spouse may abandon their marital "duty" even where the deserting spouse has not left the marital home.  *Jamison v. Jamison*, 3 Va. App. 644, 647-48 (1987) (holding that evidence of "the willful withdrawal of sexual privileges without just cause or excuse and the willful breach and neglect of other marital duties" is sufficient to support grounds for willful desertion where the parties continue to live together in the marital home).  Although there exists no single, monolithic matrimonial duty, the practical obligations that accompany marital life are manifold.  Accordingly, "[d]omestic relations cases have considered 'matrimonial duty' to include cooking, cleaning, support, and contributing to the well-being of the family." *Purce*, 275

---

[3] Although Code §§ 20-91, 20-107.1, and 20-107.3 were revised following the initiation of these divorce proceedings, none of the revisions are relevant to the instant case.  All subsequent references to Code §§ 20-91, 20-107.1, and 20-107.3 refer to the versions of the statutes in effect when wife began divorce proceedings in March 2020.

Va. at 195. Historically, the duty has also encompassed sexual intimacy. *See Jamison*, 3 Va. App. at 647-48. Thus, desertion or abandonment entails the "termination of the normal indicia of a marital relationship" coupled with the intent to not resume the marital relationship. *Purce*, 275 Va. at 195. Moreover, this willful breaking off occurs "without the consent and against the will of the other spouse." *Barnes v. Barnes*, 16 Va. App. 98, 101 (1993).

Here, the record supports dual grounds for divorce. With their relationship under strain, husband and wife began to sleep in separate bedrooms before wife left the marital home in early January 2019. When wife returned to the marital home, she and husband continued living apart from each other. Although they shared a residence and continued contact, they no longer shared a joined life consistent with marriage. Indeed, wife averred that during this period she and husband "lived separate and apart . . . without cohabitation, and with the intent to remain separate and apart permanently." Wife admitted that she conditioned her remaining in the marital home on husband's participation in marital counseling. When husband did not respond to her demand, wife left the marital home and moved into an apartment. In her motion for reconsideration, wife acknowledged that she left the marital home as a means of self-care, "to get better mentally." Husband testified that he did not force wife to leave the marital home, did not tell wife to leave the marital home, and did not tell wife that he wanted a divorce. According to husband, when wife left the marital home the first time, she told him that "[s]he did not want to be there." Even as her physical residence varied, wife maintained marital separation from husband from the time she initially left the marital home in January 2019 through the entry of the final decree of divorce in December 2021.

Based on this evidence, the trial court found that wife deserted the marriage, having broken off the matrimonial cohabitation with the intent to end the marriage. It is true that the same evidence supports a divorce based on the parties' separation of one year. *See* Code § 20-91(A)(9). Yet, "because multiple grounds existed . . . the [trial] court was free to choose

- 8 -

between those grounds in granting the divorce, and did not abuse its discretion by granting the divorce on the grounds of" desertion. *Fadness v. Fadness*, 52 Va. App. 833, 840 (2008).

Wife asserts that there "was no corroboration of th[e] finding" that wife deserted husband. For support, she points to the trial court's finding that "[n]either Wife nor Husband testified as to Wife's reason for leaving the marriage." Yet, the record is not silent on the issue of wife's reason for leaving the marriage. Wife physically left the marital home after husband did not respond to her request for marriage counseling. The evidence establishes that she took additional actions to terminate or discontinue all indicia of the marital relationship: wife chose to live in a spare bedroom, in her parents' home, and in a separate apartment to be separate from husband; she did not hold herself out as married; and she stopped contributing to marital debts and obligations. Husband's testimony reflects that he did not seek or compel marital separation. He testified that wife told him that she "just had to leave." Combined, this evidence supports the trial court's finding of desertion. *See Ringgold v. Ringgold*, 128 Va. 485, 499 (1920) (recognizing that "protracted absence, with other circumstances, may establish the original intent" of desertion (quoting *Bailey v. Bailey*, 62 Va. 43, 47 (1871))).

> b. *Wife's reason for leaving the marital home was not legally justifiable.*

Wife challenges the trial court's finding of desertion by asserting that her departure was justified by her mental health, arguing that "her leaving was not abandonment, it was for her to get better mentally." Wife's reason for leaving the marital home does not constitute legal justification for desertion under Virginia law.

"[A] party may be justified in leaving a marital [home] even if grounds of divorce do not exist and may do so without committing desertion." *Kerr v. Kerr*, 6 Va. App. 620, 624 (1988). Although our jurisprudence supplies "no fixed formula for determining when justification exists, [it] recognize[s] the underlying premise that leaving the marital home is justified when a spouse's

conduct creates conditions so intolerable that the other spouse cannot reasonably be expected to remain in the home." *Id.* Thus, we have held that "[t]he burden of going forward with evidence of justification or showing that leaving was for a reason other than the intent to desert rests on the party who claims his or her leaving was without an intent to desert." *D'Auria v. D'Auria*, 1 Va. App. 455, 459 (1986) (citing *Graham v. Graham*, 210 Va. 608, 610 (1970)).

Virginia has consistently recognized desertion or abandonment as justified in circumstances that feature patterns of intimate partner violence and other forms of intolerable mistreatment and cruelty. *See Pillow v. Pillow*, 13 Va. App. 271, 276 (1991); *Kerr*, 6 Va. App. at 625-26; *Brawand v. Brawand*, 1 Va. App. 305, 310-11 (1985); *Breschel v. Breschel*, 221 Va. 208, 211-12 (1980); *Capps v. Capps*, 216 Va. 382, 385 (1975); *Rowand v. Rowand*, 215 Va. 344, 345-46 (1974); *Graham*, 210 Va. at 616. Indeed, we have held that even

> a single act of physical cruelty will constitute [such justified] grounds . . . if it is so severe and atrocious as to endanger life, if it indicates an intention to do serious bodily harm, if it causes reasonable apprehension of serious danger in the future, or if the precedent or attendant circumstances show that the acts are likely to be repeated.

*Davis v. Davis*, 8 Va. App. 12, 15 (1989).

Such a "single act" or patterns of intimate partner violence or intolerable mistreatment or cruelty are not present here. *Sprott v. Sprott*, 233 Va. 238 (1987), better resembles the case before us. There, our Supreme Court traced the gradual deterioration of the parties' marital relationship, noting how, over time, wife "began to build what she described as a 'psychological wall' between herself and [husband]" and "[a]fter each perceived affront, [wife] added another brick to the wall." *Id.* at 241. When wife eventually left the marriage, the Court declined to "hold[] that one spouse is legally justified in leaving the other merely because there has been a gradual breakdown in the marital relationship." *Id.* at 242. Similarly, we held in *D'Auria* that, although "wife's physician testified that her physical problems were the result of severe anxiety in contemplation of divorce,"

- 10 -

the evidence failed to "establish that husband's behavior was the cause of wife's emotional difficulties," and, thus, that wife was legally justified in deserting her husband. 1 Va. App. at 460.

Here, wife testified to trust problems within the marriage, as well as to her recurring "mental problems." But her assertions fail to establish unreasonably intolerable conditions or conduct—unreasonable or otherwise—by husband that created or contributed to wife's mental-health issues.

Conflicts concerning trust, mental health, and other intangible elements can, we acknowledge, work like a potent solvent to slowly dissolve the bonds of intimacy and unity in a marital relationship. Yet whether such elements are sufficient to dissolve the legal bonds of marriage is a different matter. And the relevant question before us concerns whether the non-departing spouse "'caused conditions in the marital home to be intolerable'" and whether, as a result, "the departing spouse 'reasonably believe[d] that . . . her health [wa]s endangered by remaining in the household . . . .'" *Gottlieb v. Gottlieb*, 19 Va. App. 77, 82 (1994) (first quoting *Kerr*, 6 Va. App. at 623; and then quoting *D'Auria*, 1 Va. App. at 459). Even if wife's mental health was impacted by staying in the marital home, the record lacks evidence to show that her health was endangered due to husband's conduct.

While providing that "cruelty" or "reasonable apprehension of bodily hurt" may serve as justified grounds for divorce, Code § 20-91(A)(6) expresses no similar recognition of mental health issues, generally, as sufficiently deleterious to justify unilateral termination of a marital relationship.[4] But whether and to what extent the law keeps pace with evolving social perspectives regarding marriage, divorce, and mental health is a determination reserved to the legislature. Even if addressing this intersection in the law "may be highly desirable from the standpoint of social

---

[4] Under current law, any spouse who breaks off marital cohabitation with the intent to leave their marriage, whose departure is neither legally justifiable nor consented to by the other spouse, may be found to have deserted or abandoned their marriage. This is true even, plausibly, where a marital relationship has deteriorated to the point of compelling separation and divorce.

policy . . . it would represent a marked change from the settled rule in Virginia." *Lane Co., Inc. v. Saunders*, 229 Va. 196, 199 (1985). Hence, our applicable legal standards do not justify wife's legal fault in deserting the parties' marriage.

## II. The trial court did not err in its decision not to award wife spousal support.

Wife contends that the trial court abused its discretion in declining to award her spousal support. Wife's argument reduces to three claims. First, wife claims that the trial court erred by "heavily consider[ing] the fault grounds" when determining whether to award her spousal support. Second, wife claims that the trial court's decision not to award spousal support is inequitable and fails to properly account for wife's contributions to the marriage, her sacrifices, and, in turn, her earning potential compared to that of husband. Third, wife contests the trial court's finding that her "financial statement was not credible" and argues that a trial court should craft an award of spousal support reflecting the "marital standard of living." We disagree with wife's contention and hold that because the trial court awarded wife a reservation of spousal support in accordance with Code § 20-107.1(D), her claims are without merit.

Whether to award spousal support is a matter within the broad discretion of the trial court. *See Northcutt v. Northcutt*, 39 Va. App. 192, 196 (2006). Thus, the judgment of the trial court will be disturbed only when there has been "a clear abuse of discretion." *See Giraldi v. Giraldi*, 64 Va. App. 676, 682 (2015) (quoting *Fadness*, 52 Va. App. at 845). The abuse of discretion standard recognizes that a court has a "range of choice" and that "its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Galiotos v. Galiotos*, 300 Va. 1, 10 (2021) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). In other words, "[w]e will reverse the trial court only when its decision is plainly wrong or without evidence to support it." *Gamble v. Gamble*, 14

Va. App. 558, 574 (1992). However, "[w]e review the trial court's statutory interpretations and legal conclusions *de novo*." *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 434 (2020).

*a. The trial court properly weighed wife's fault.*

We begin by recognizing that "[t]he courts of this Commonwealth are empowered to assess spousal support awards, not to penalize or reward either party to the marriage contract, but rather to do equity between the two and to protect society's interests in the incidents of the marital relationship." *Jacobs v. Jacobs*, 219 Va. 993, 995 (1979). To that end, the scope and breadth of the trial court's authority to make an initial award of spousal support is contained within Code § 20-107.1. A trial court may, in its discretion, award a party spousal support to be paid "in periodic payments for a defined duration, or in periodic payments for an undefined duration, or in a lump sum award, or in any combination thereof." Code § 20-107.1(C). Nonetheless, "in lieu of an award pursuant to subsection C," a trial court may also exercise its discretion to "reserve the right of a party to receive support in the future." Code § 20-107.1(D). In other words, a court-ordered reservation of the right to receive spousal support pursuant to Code § 20-107.1(D) is a "decree concerning maintenance and support" of a spouse. When a trial court grants a reservation of spousal support it is awarding the right to seek periodic or lump sum support and maintenance at a later date. *See Wyatt v. Wyatt*, 70 Va. App. 716, 720 (2019) ("When a court does not award [a] spousal support [sum], it may 'reserve the right of a party to receive [spousal] support in the future.'"). We have previously held that a trial court is mandated to grant this reservation when a party requests it. *See id.*; *Bacon v. Bacon*, 3 Va. App. 484, 491 (1986) (holding that "it is reversible error for the trial court, upon request of either party, to fail to make a reservation in the decree of the right to receive spousal support"). But absent such request, the award of a reservation is entirely within the discretion of the trial court. Thus, the

trial court here did not deny wife spousal support but rather awarded her the right to seek support at another, future time.

An order for reservation of spousal support, like an order granting or denying support under subsection C, must "be accompanied by written findings and conclusions of the court identifying the factors in [Code § 20-107.1] subsection E which support the court's order." Code § 20-107.1(F). The primary considerations of a trial court in determining whether to award spousal support—including a reservation of spousal support—are "the circumstances and factors which contributed to the dissolution of the marriage, *specifically* including adultery and *any other ground for divorce* [*including desertion and cruelty*]." *Wyatt*, 70 Va. App. at 719 (alteration in original) (emphases added) (quoting Code § 20-107.1(E)).

Wife argues that the trial court "heavily" considered her fault when determining whether to award her a specific spousal support amount. Although a trial court is not required "to quantify or elaborate exactly what weight or consideration it has given to *each* of the statutory factors," *Pilati v. Pilati*, 59 Va. App. 176, 183 (2011) (emphasis added) (quoting *Duva v. Duva*, 55 Va. App. 286, 300 (2009)), given that it must, under subsection F, provide written findings and conclusions, the fact that the trial court here did expressly state the weight given to wife's fault is not inconsistent with its statutory obligation, and thus not reversible error.[5]

---

[5] We note, however, that Code § 20-107.1(F) requires that an order reserving a right of spousal support "state whether the retirement of either party was contemplated by the court and specifically considered by the court in making its award." The trial court did not include such statement in the final decree of divorce. As neither husband nor wife assign error to that statutory noncompliance, we do not address it here. *See Commonwealth ex rel. Breakiron v. Farmer*, 32 Va. App. 430, 437 (2000) ("A matter not in dispute before the trial court will not be considered for the first time on appeal[.]" (quoting *Connelly v. Commonwealth*, 14 Va. App. 888, 891 (1992))).

- 14 -

*b. The trial court properly considered all statutory factors.*

Moreover, the trial court's spousal support decision did not turn on the single fulcrum point of fault. Although the trial court expressed the "heavy weight" it attributed to wife's desertion, it is clear from the record that fault was not the exclusive—or even the "heaviest"— factor to which the trial court gave weight in its spousal support decision. The trial court also has discretion in determining "the 'nature, amount and duration' of the award." *Robinson v. Robinson*, 54 Va. App. 87, 91 (2009) (quoting Code § 20-107.1(E)). To make this determination, it must make and weigh findings regarding the statutory factors of Code § 20-107.1.

In addition to considering "the standard of living established during the marriage," "the duration of the marriage," and the "contributions, monetary and nonmonetary, of each party to the well-being of the family," the trial court must also weigh, among other considerations, the obligations, needs, and financial resources of the parties. Code § 20-107.1(E). *See also Wyatt*, 70 Va. App. at 719 ("In determining the appropriate amount of spousal support, the trial court must consider the needs of the requesting party and the other spouse's ability to pay." (quoting *Alphin v. Alphin*, 15 Va. App. 395, 401 (1992))). But the "party seeking spousal support bears the burden of proving all facts necessary for an award including evidence of financial need[.]" *Andrews v. Creacey*, 56 Va. App. 606, 634 (2010) (quoting *Robbins v. Robbins*, 48 Va. App. 466, 484 (2006)).

Here, the record demonstrates that the trial court took care to balance the fault grounds for the divorce against wife's established financial need. At trial, wife admitted that her financial statement included estimated future expenses rather than expenses establishing a baseline for her current need. The trial court found that wife provided an unreliable financial statement that failed to track wife's "current needs." Based on wife's testimony, the trial court's conclusion that wife failed to meet her evidentiary burden was not plainly wrong. *See Andrews*, 56 Va. App. at 634.

The trial court also took care to balance its spousal support decision against other considerations, including its decision to make husband solely responsible for the paying down of the marital debt. *See* Code § 20-107.1(E)(8) ("[T]he court shall consider . . . [t]he provisions made with regard to the marital property under § 20-107.3."). The court found that wife and husband had "acquired a large amount of debt during the marriage." In recognition of "the large disparity in income between the Parties [and] Husband's ability to continue making payments," the trial court assigned to husband the task of maintaining the debt and accordingly found that "Wife is not entitled to spousal support at this time." Even so, the trial court awarded wife a reservation of spousal support, in recognition that she may, in the future, demonstrate a need for support. The trial court expressly found that it would be "manifest[ly] unjust" to withhold such a reservation.[6]

Code § 20-107.1(E) tasks trial courts with a complex balancing act. *See Robinson*, 54 Va. App. at 96 (recognizing that the 13 economic and noneconomic factors include factor "number thirteen . . . an open-ended directive that 'the court shall consider . . . [s]uch other factors . . . as are necessary to consider the *equities* between the parties'" (emphasis added)). Although a trial court may struggle to craft judgments with perfect Solomonic precision, the trial court here balanced the equities by fashioning a judgment that accounted for the financial, fault, and other complexities that accompanied the parties' divorce. On appeal, this Court does not question whether it would have rendered the same judgment. Rather, "only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Galiotos*, 300 Va. at 11 (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). That is, it is only when reasonable jurists would uniformly agree that an abuse of discretion has occurred.

---

[6] Although the trial court found that "it would present a manifest injustice" to deny wife a reservation of spousal support, we do not consider this statement indicative of the trial court applying the "manifest injustice" exception to a bar to spousal support under Code § 20-107.1(B), which is implicated only in cases where a party has established adultery grounds.

- 16 -

Here, where it stayed within the fixed parameters of law, the trial court did not abuse its discretion in awarding to wife a reservation of spousal support in lieu of a sum.

### III. Credit for Mortgage and HELOC Payments

Wife further challenges the judgment of the trial court in awarding husband credit for the full amount that he paid toward the mortgage and HELOC during the parties' separation and divorce. Wife argues that although "Virginia law does not require . . . any specific credit be given for postseparation mortgage payments," the trial court's decision to make a dollar-for-dollar award is "unprecedented." We find wife's arguments unpersuasive and hold that the trial court did not abuse its discretion in awarding husband credit for his mortgage and HELOC payments.

"Code § 20-107.3, which governs awards of equitable distribution, 'is intended to recognize a marriage as a partnership and to provide a means to divide equitably the wealth accumulated during and by that partnership based on the monetary and non-monetary contributions of each spouse.'" *von Raab v. von Raab*, 26 Va. App. 239, 245 (1997) (quoting *Williams v. Williams*, 4 Va. App. 19, 24 (1987)). In rendering its equitable distribution judgment, a trial court must first determine property "ownership and value," including legal title, and then classify the property as either marital, separate, or partially both. Code § 20-107.3(A). Next, "the court may (1) order the division or transfer, or both, of jointly owned marital property, (2) apportion and order the payment of marital debts, or (3) grant a monetary award to either party." *von Raab*, 26 Va. App. at 246. "The court must determine the amount of its award of any of these remedies 'upon the factors listed in [Code § 20-107.3(E)].'" *Id.* (alteration in original) (quoting Code § 20-107.3(C), (D)).

"[T]o the extent that the appeal requires an examination of the proper interpretation and application of Code § 20-107.3, it involves issues of law, which the Court reviews *de novo* on appeal." *Dixon*, 71 Va. App. at 718. At the same time, "[i]n reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily

- 17 -

on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." *Stark v. Dinarany*, 73 Va. App. 733, 749-50 (2021) (quoting *Wright v. Wright*, 61 Va. App. 432, 449-50 (2013)). "Accordingly, 'decisions concerning equitable distribution rest within the sound discretion of the trial court.'" *Id.* at 750 (quoting *Wright*, 61 Va. App. at 450). "The [trial] court's 'discretion is limited only in that the [trial] court must consider all of the factors in Code § 20-107.3(E).'" *Id.* (quoting *Fadness*, 52 Va. App. at 842). These factors, like the other provisions in Code § 20-107.3, reflect the larger purpose of the statute, having been designed to affect a distribution of assets and liabilities that is equitable. But such a distribution need not be numerically *equal* to be equitable. Indeed, "[i]t is within the discretion of the court to make an equal division or to make a substantially disparate division of assets as the factors outlined in Code § 20-107.3(E) require." *Rinaldi v. Rinaldi*, 53 Va. App. 61, 76 (2008) (quoting *Matthews v. Matthews*, 26 Va. App. 638, 645 (1998)). Although "the trial court *must* consider each of the statutory factors, [it] *may* determine what weight to assign to each of them." *Robbins*, 48 Va. App. at 481 (quoting *Owens v. Owens*, 41 Va. App. 844, 859 (2003)).

Subdivision 2 of Code § 20-107.3(E) provides that a court may consider "contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance" of marital property. Code § 20-107.3(E)(2). We have held that "Code § 20-107.3 does not mandate that the trial court award a corresponding dollar-for-dollar credit for such contributions." *von Raab*, 26 Va. App. at 250. Accepting *arguendo* wife's contention that the trial court's award was "unprecedented," it does not follow that the trial court's decision exceeded statutory bounds. The statute does not prescribe a set formula that trial courts must apply when dividing assets and liabilities. *See Hart v. Hart*, 27 Va. App. 46, 57 (1998) ("Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it." (quoting *Srinivasan v. Srinivasan*, 10 Va. App.

728, 732 (1990))).  Just as the plain text of Code § 20-107.3 does not mandate a dollar-for-dollar credit for post-separation payments, neither does it preclude a trial court, in the exercise of its discretion, from awarding the same.

Further, the trial court weighed the factor of "the dissolution of the marriage and the efforts made by husband to maintain this marital asset upon wife's desertion."  *See* Code § 20-107.3(E)(5).  After weighing the factors, the trial court crafted an award that it concluded approximated equity.  In so doing, it rendered a judgment that was responsive to evidence in the record.  Wife argues that the equitable distribution award was not equitable because it failed to consider that husband had exclusive use and possession of the marital home.  But husband had exclusive use of the marital home by virtue of wife's desertion, so the trial court did not err by assigning little weight to wife's argument.

The trial court determined that "Husband is entitled to a credit in the amount he has paid toward the Mortgage and H[ELOC] from the date of separation to the date of this opinion."  On appeal, wife assumes the credit granted to husband by the trial court encompasses the *total* amount husband paid toward the mortgage and HELOC, including principal and interest.  Wife's assumption is inconsistent with the record before us.  The parties stipulated that, at the time of trial, husband had paid down the mortgage and HELOC principal by $14,321.86 since the date of separation.  Husband also presented evidence supporting these payments.  This is the only evidence in the record regarding the "amount [husband] paid toward the mortgage and H[ELOC] from the date of separation to the date of this opinion," which is the credit that the trial court gave husband.  Hence, husband's credit is confined to the $14,321.86 husband paid from the date of separation through the date of trial, plus any additional payments husband made between the date of trial through the date of the court's letter opinion of July 14, 2021.  Contrary to wife's contention, the trial court neither awarded husband more than he requested nor more than that amount which was

supported by the evidence.[7]  Because the trial court did not abuse its discretion in awarding husband

full credit for the payments introduced at trial, we find no error.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

<em>Affirmed</em>.

---

[7] At oral argument, wife argued that the trial court erred in its application of the credit to wife's share of the total marital equity.  Put differently, wife claimed that the trial court did not direct that husband's separate credit be taken "off the top" of the total amount before dividing between the parties.  Although wife did not make this argument on brief, we note that the argument mischaracterizes the court's order.  In the final decree of divorce, the trial court adjudged, ordered, and decreed that "*prior to the distribution of the equity in the real property*, Husband shall be entitled to a credit in the amount that he has paid towards the . . . mortgage and the HELOC mortgage from the date of separation (January 1, 2019) to the date of the Opinion letter (July 14, 2021)."  (Emphasis added.)